Tanner Laiche
CA State Bar No. 344342
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com
Attorneys for Petitioner Neural AI, LLC

[Additional Counsel listed on Signature Page]

*Attorneys for Petitioner Neural AI, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>OAI INTERNATIONAL, INC.,<br><br>Respondent. | Misc. Case No. 3:26-mc-80261<br><br>**NOTICE OF PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY OAI INTERNATIONAL, INC.**<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, petitioner Neural AI, LLC ("NAI"), plaintiff in the underlying action *Neural AI, LLC v. NVIDIA Corporation*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.), respectfully moves this Court for an order compelling non-party OAI International, Inc. (f/k/a OpenAI, LLC) ("OpenAI") to produce documents responsive and to appear for deposition testimony as commanded by NAI's subpoenas.

The grounds for this motion are explained in detail in the accompanying memorandum of law and Declaration of Tanner Laiche.

Dated: August 17, 2026

Respectfully submitted,

*/s/ Tanner Laiche*
Max L. Tribble

Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
CA State Bar 344342
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorneys for Petitioner Neural AI, LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>OAI INTERNATIONAL, INC.,<br><br>Respondent. | Misc. Case No. 26-80261<br><br>**NEURAL AI'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY OAI INTERNATIONAL, INC.**<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

# TABLE OF CONTENTS


I. FACTUAL BACKGROUND ..... 2

A. The Underlying Litigation ..... 2

B. The Rule 45 Subpoenas to OpenAI, OpenAI's Place-of-Compliance Objection, and the Re-Served Subpoenas ..... 4

II. OPENAI MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA ..... 7

A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims ..... 8

B. OpenAI Has Not Substantiated Burden and NAI Offered Narrower Alternatives ..... 11

III. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*, 2024 WL 1977160 (W.D. Tex. April 30, 2024) ........ 11, 15

*Camoco, LLC v. Leyva*, 333 F.R.D. 603 (W.D. Tex. 2019) ........ 10

*FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130 (D. Del. Apr. 11, 2022) ........ 12

*Flores v. Lowes Home Centers, L.L.C.*, 2023 WL 3959399 (W.D. Tex. June 12, 2023) ........ 10

*Kim v. NuVasive, Inc.*, 2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) ........ 12

*Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ........ 12

*Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) ........ *passim*

*Neural AI, LLC v. NVIDIA Corporation*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) ........ 3

*Waller v. Jet Specialty, Inc.*, 2024 WL 7050192 (W.D. Tex. Nov. 19, 2024) ........ 11

**Rules**

Fed. R. Civ. P. 26 ........ 10

Fed. R. Civ. P. 26(b)(1) ........ 10

Fed. R. Civ. P. 34 ........ 15

Fed. R. Civ. P. 45 ........ 5, 10, 15

Fed. R. Civ. P. 45(d)(2)(B)(i) ........ 11

This motion arises from *Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) (the "Underlying Action"), a patent-infringement action in which customer deployment of the accused technology is a central disputed issue. Petitioner Neural AI, LLC ("NAI") alleges that defendant NVIDIA Corporation's ("NVIDIA") GPU-accelerated computing hardware and software infringe patents covering GPU-based accelerated computing systems and methods. *See* Exhibit 1. The patents-in-suit are U.S. Patent No. 8,648,867 (the "'867 Patent") (Exhibit 2), Reissue Patent No. RE48,438 (the "'438 Patent") (Exhibit 3), and Reissue Patent No. RE49,461 (the "'461 Patent") (Exhibit 4) (collectively, the "Asserted Patents"). Each is titled "Graphic Processor Based Accelerator System and Method."

A central issue in the Underlying Action is how and when NVIDIA's accused hardware and software operate in customers' real-world systems. NVIDIA's accused technology operates through real-world customer deployments in which customers use integrated combinations of NVIDIA hardware and software to practice the asserted method claims. NVIDIA disclaims knowledge of how third parties use the accused methods and maintains that those facts reside with the end user or system operator: not NVIDIA. *See* Exhibit 7 at 12–13; Exhibit 8; Laiche Decl. ¶¶ 30–31.

To obtain discovery bearing directly on NVIDIA's defenses, NAI served OpenAI, LLC ("OpenAI") on June 24, 2026, with subpoenas for documents and testimony. *See* Exhibit 6. The subpoenas seek information about whether, how, and when OpenAI combines, configures, and uses the accused NVIDIA hardware and software to perform the asserted methods. This is information NVIDIA has placed in dispute. The twelve document requests seek documents sufficient to show how OpenAI uses and integrates NVIDIA GPUs and software, including the architecture and operation of OpenAI's systems, the movement and storage of input and output data, and the scheduling and execution of GPU computations. The five deposition topics seek focused testimony on the same subjects. OpenAI is uniquely positioned to identify its own architecture materials, configuration files, representative profiler traces, and the NVIDIA hardware and software it deploys.

OpenAI has not produced a single document, agreed to provide a witness, or committed to any concrete form of compliance. *See* Exhibits 9–10. It instead served written objections and responses on July 16, 2026, refusing to produce documents in response to every request and refusing to designate a witness on every deposition topic.

NAI offered OpenAI multiple less burdensome paths to provide the necessary information. NAI met and conferred with OpenAI, explained the technology and relevance of customer deployment evidence, and identified the implicated OpenAI products and systems. On August 5, 2026, NAI provided focused technical questions covering OpenAI's NVIDIA software deployments, input and output data paths, memory organization, buffer and pointer reuse, runtime compilation, and more. *See* Exhibit 12 at 1; Exhibit 13.

NAI went further still. It offered a draft declaration that a knowledgeable OpenAI representative could execute after a reasonably diligent investigation rather than insisting on full document production and a deposition. *See* Exhibit 14. NAI invited OpenAI to revise the declaration to fit its systems while still addressing the core technical facts. *See* Exhibit 12 at 1. The proposal could have narrowed or eliminated inapplicable requests and potentially avoided broader collection and deposition testimony. NAI offered it to reduce burden and avoid motion practice. OpenAI has flatly refused to commit to producing anything.

NAI therefore requests an order compelling OpenAI to produce documents responsive to Requests 1–12 on a rolling basis by dates certain and to designate and produce a knowledgeable witness on Deposition Topics 1–5.

## I. FACTUAL BACKGROUND

### A. The Underlying Litigation

The Underlying Action involves claims of direct, indirect, and induced patent infringement by NVIDIA relating to claims 16–19 of the '867 Patent; claims 1, 3–6, 8–9, 12, 14, 17–18, 21–23, 29–30, 32, 40, 43–44, 46, 48, 51–52, and 55–57 of the '438 Patent; and claims 21–25 and 27–30

of the '461 Patent (collectively, the "Asserted Claims"). *See* Exhibit 1. The Asserted Patents teach systems and methods for GPU-accelerated computing technology. *See* Exhibits 2–4.

The products at issue in the Underlying Action—as identified in NAI's January 20, 2026 Final Infringement Contentions (Exhibit 7) and the Subpoenas (Exhibit 5)—comprise integrated combinations of NVIDIA hardware and software that together implement GPU-accelerated computing. NAI alleges that NVIDIA's hardware, including its GPUs and servers, and its GPU-accelerated software, including for example CUDA, cuDNN, TensorRT, and higher-level frameworks, infringe the Asserted Patents and that NVIDIA encourages its customers to combine, configure, and use those products in an infringing manner. *See* Exhibit 7 at 12–13.

NVIDIA has made customer deployment central to its defense. It contends that selling or providing the accused hardware and software does not establish that customers configure or deploy those products in the manner alleged in NAI's infringement contentions. *See* Exhibit 8 ¶¶ 18, 20–23, 87, 131, 171. NVIDIA has stated throughout discovery—and represented to the Court during a sealed discovery conference on September 8, 2025—that NAI would need to seek from customers and end users any discovery showing how NVIDIA hardware and software are actually deployed. *See* Laiche Decl. ¶ 30. Evidence concerning whether and how NVIDIA's customers, partners, and end users combine, configure, deploy, and use the accused products is therefore directly relevant to NAI's infringement claims. NAI is entitled to obtain that evidence from the third parties that deploy those products in real-world systems, like OpenAI.

OpenAI is one of NVIDIA's most significant and strategic partners, customers, and end users of the Accused Products. NVIDIA and OpenAI announced a landmark strategic partnership to deploy at least 10 gigawatts of NVIDIA systems for OpenAI's next-generation AI infrastructure, representing millions of NVIDIA GPUs. *See* Exhibit 15. NVIDIA intends to invest up to $100 billion in OpenAI progressively as each gigawatt is deployed, and the first gigawatt of NVIDIA systems will be deployed in the second half of 2026 on NVIDIA's Vera Rubin platform. *See id.;* Exhibit 16. NVIDIA's CEO, Jensen Huang, described this as "the biggest AI infrastructure project in history" and stated that "[t]his partnership is about building an AI infrastructure that enables AI

to go from the labs into the world." *See* Exhibit 16. Sam Altman, CEO of OpenAI, stated that "[t]here's no partner but NVIDIA that can do this at this kind of scale, at this kind of speed." *See id.* OpenAI is therefore a real-world integrator, user, and deployer of the accused GPU-acceleration hardware and software on a massive scale. Its documents concerning the configuration, integration, deployment, and use of those products bear directly on issues NVIDIA has placed in dispute, including whether the Accused Products are used in an infringing manner and whether NVIDIA induced or contributed to that infringement.

### B. The Rule 45 Subpoenas to OpenAI, OpenAI's Place-of-Compliance Objection, and the Re-Served Subpoenas

NAI served OpenAI, LLC on June 24, 2026, with Rule 45 subpoenas for documents and corporate testimony. *See* Exhibit 6. The document subpoena contains twelve targeted requests directed to how OpenAI actually configures, integrates, and uses NVIDIA GPUs and related NVIDIA software. *Id.* The accompanying deposition subpoena seeks testimony on the same core subjects, including the NVIDIA software and sample source code OpenAI uses, OpenAI's customizations and data inputs, the software it deploys on NVIDIA GPUs, and the manner in which GPU-computation results are stored, transferred, referenced, and reused. *See id.* The Subpoenas are limited to the relevant damages period—September 13, 2018 to the present—and to U.S.-based activity or activity supporting or directed toward U.S. operations. *Id.* at 12.

The original subpoenas designated Austin, Texas, as the place of compliance. *See* Exhibit 6. On July 7, 2026, OpenAI's counsel contacted NAI and disclosed that in December 2025, OpenAI, LLC had converted into OAI International, Inc., a Delaware corporation. *See* Exhibit 11 at 2. Counsel requested a two-week extension to respond to the subpoenas. *Id.* NAI agreed to a one-week extension, making the new deadline for written objections and responses July 16, 2026. *See id.*

OpenAI submitted its responses and objections to the original subpoenas on July 16, 2026. *See* Laiche Decl. ¶¶ 10–11; Exhibits 9–10. OpenAI objected to every request on grounds of undue burden, overbreadth, improper place of compliance, vagueness, lack of proportionality, confidentiality, and lack of relevance, and declined to produce any documents or designate any witness. *See* Exhibits 9–10.

After OpenAI served its objections, the parties met and conferred on July 22, 2026. On that call OpenAI's counsel objected that the Austin, Texas place of compliance was improper and declined to engage substantively regarding the requests and topics based on that alleged enforceability issue. *See* Exhibit 12. To eliminate the place-of-compliance objection and move the dispute forward, NAI re-served substantively identical subpoenas on July 23, 2026, designating San Francisco, California as the place of compliance. *See* Exhibit 5. OpenAI's responses to the re-served subpoenas were due on or about August 8, 2026.

Anticipating that OpenAI would once again lodge boilerplate objections to the revised subpoenas and refuse to produce any documents and provide a witness, NAI preemptively tried to resolve the dispute without court intervention. On August 5, 2026—prior to OpenAI's response deadline—NAI provided a focused set of technical questions designed to identify the NVIDIA products, configurations, and data paths OpenAI actually uses. *See* Exhibit 13.

In addition, NAI provided OpenAI with a draft declaration as an alternative means of establishing the relevant facts without requiring a broader document collection or deposition. *See* Exhibit 12 at 1 ("If OpenAI commits to providing an executed declaration, Neural AI is willing to consider accepting the declaration in lieu of further document production and/or deposition testimony, subject to resolving any material gaps."); Exhibit 14. The draft would permit a knowledgeable declarant, after a reasonably diligent investigation, to identify the NVIDIA GPU architectures and software OpenAI uses and confirm whether and approximately how often OpenAI deploys those products as designed and intended by NVIDIA, without modifying NVIDIA's source code. *See* Exhibit 14. It also addressed technical issues tied directly to the Asserted Claims, including, for example, whether OpenAI's systems use separate CPU and GPU memory; whether input data is processed in CPU main memory before being transferred to the GPU; whether OpenAI uses pretrained models, implementations, or configurations made available or recommended by NVIDIA; whether OpenAI employs custom code or configurations that alter the default CPU-to-GPU data path; and whether GPU outputs are transferred back to CPU main memory for further processing or delivery. Each of these topics is tied to claim elements identified in the Asserted Claims.

NAI invited OpenAI to revise it as necessary to reflect the results of its investigation and the actual operation of its systems, while still addressing the core technical facts needed to protect NAI's discovery rights. *See* Exhibit 12 at 1. The proposal offered OpenAI a practical means to confirm or deny those facts, narrow or eliminate document requests that did not apply, and potentially avoid a broader document collection and deposition.

On August 7, OpenAI's counsel, Matthew Warren, answered with accusations rather than substance. He blamed NAI for "engineering its own emergency," faulted NAI for delay in serving the subpoenas, and demanded a "focused list" of required information even though NAI had already provided precisely that through its focused questions and draft declaration. *See* Exhibit 21 at 1–2. Mr. Warren did not meaningfully address NAI's proposals, identify what was objectionable about them, or offer any narrowing of his own. *Id.*

On August 10, NAI responded. It noted that the timing was driven by Court-ordered deadlines, not NAI's strategic choices; that NAI had first pursued the discovery from NVIDIA before turning to third parties; and that the draft declaration was a targeted, less burdensome alternative. *See* Exhibit 22 at 1–2. NAI offered to hold off filing until August 17 if OpenAI would commit to an executed declaration addressing the core factual issues by that date, and offered to withdraw the motion if the parties reached agreement. *See* Exhibits 21–22.

OpenAI rejected that path. On August 12, Mr. Warren sent four demands that NAI justify its subpoenas, accused NAI of seeking "interrogatories" through the declaration, characterized NAI's compromise proposals as bad faith, and threatened to defend on a supposed failure to meet and confer. *See* Exhibit 23. He still did not engage the substance of the discovery, propose a narrower request, or commit to producing anything. *Id.*

On August 13, NAI answered point-by-point. On August 14, the parties conferred. NAI made its final accommodation: OpenAI could produce documents sufficient to show the information sought in NAI's draft declaration instead of undertaking broader document production and deposition testimony. *See* Exhibit 26. On August 17, however, OpenAI rejected that proposal. It asserted that NAI had no basis to believe OpenAI had done anything infringing, claimed the draft

declaration was too broad, and objected that it addressed ordinary-course-of-business use of NVIDIA hardware and software. Exhibit 27 at 1–2. OpenAI refused every accommodation NAI offered, proposed no workable narrowing of its own, and left NAI with no discovery whatsoever. *See* Exhibits 25–27.

Document discovery in the underlying action closed August 11, 2026, but Defendant NVIDIA Corporation stipulated to extend the deadline for third-party motions to compel to August 18, 2026. Deposition discovery closes September 16, 2026. *See* Laiche Decl. ¶ 33; *see also Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG, Dkt. 181 (W.D. Tex.).

## II. OPENAI MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "At the discovery stage, relevancy is broadly construed." *Flores v. Lowes Home Centers, L.L.C.*, 2023 WL 3959399, at *2 (W.D. Tex. June 12, 2023). "[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Id.* (quoting *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019)).

Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i). Once a party moving to compel discovery establishes that the materials are relevant, "[t]he party opposing discovery bears the burden of stating 'with specificity the grounds for objecting to the request.'" *Waller v. Jet Specialty, Inc.*, 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024); see also *611 Carpenter LLC v. Atlantic Casualty Ins. Co.*, 2024 WL 1977160, at *1 (W.D. Tex. April 30, 2024) (granting party's motion to compel non-party subpoena). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *611 Carpenter*, 2024 WL 1977160, at *1.

### A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims.

NVIDIA has made customer deployment—not merely product capability—a disputed issue in the Underlying Action. It contends that selling or providing the accused products does not prove that customers ultimately configure and use them as alleged and that NAI needs customer evidence to prove indirect infringement and its extent. *See* Exhibit 8 ¶¶ 20–23; Laiche Decl. ¶¶ 30–31. OpenAI is one of NVIDIA's most significant and strategic partners, customers, and end users of the Accused Products. NVIDIA and OpenAI have announced a landmark strategic partnership to deploy at least 10 gigawatts of NVIDIA systems for OpenAI's next-generation AI infrastructure, representing millions of NVIDIA GPUs, with NVIDIA intending to invest up to $100 billion in OpenAI. *See* Exhibits 15–16. NVIDIA's CEO described this as "the biggest AI infrastructure project in history." *See* Exhibit 16. OpenAI has grown to over 700 million weekly active users and has strong adoption across global enterprises, small businesses, and developers. *See* Exhibit 15 at 2. OpenAI's documents and testimony can show whether and how often the accused methods are actually performed by OpenAI, and not merely whether NVIDIA products are theoretically capable of performing them.

The requested information is uniquely within OpenAI's possession. NVIDIA may know what it designed and distributed, but OpenAI alone knows what it selected, configured, deployed, and actually ran, and the extent of that use. NVIDIA does not possess OpenAI's internal architecture diagrams, container and environment configurations, production software settings, or memory-allocation records. NVIDIA has repeatedly disclaimed meaningful insight into how its customers and end users ultimately deploy, configure, and operate NVIDIA hardware and software. *See* Laiche Decl. ¶ 31. In fact, during a sealed discovery conference on September 8, 2025, NVIDIA told the Court that if NAI wanted to learn how the accused software was deployed in real-world systems, NAI would need to seek that information from NVIDIA's customers and end users. *See* Laiche Decl. ¶ 30. NAI did exactly that.

**As for the document requests,** the twelve requests are tied to the Asserted Claims and follow the accused computation from software selection, through input and execution, to memory and output:

- **Requests 1–4** seek documents sufficient to identify the software, frameworks, libraries, APIs, scripts, configurations, and custom code OpenAI uses on NVIDIA GPUs; the NVIDIA software and sample code it uses; and how OpenAI calls, interfaces with, wraps, depends on, modifies, or extends that functionality. They show which accused products OpenAI deployed and whether OpenAI used them as provided and intended or materially modified them.

- **Requests 5–6** seek architecture, design, data-flow, control-flow, and execution-flow materials and documents showing whether the relevant computations involve neural networks, layers, and outputs used as inputs to later neurons or layers. They show whether OpenAI's systems perform the claimed GPU-accelerated operations and how the accused hardware and software work together as relevant to the Asserted Claims.

- **Requests 7–10** address the claimed memory and data paths: pointer, buffer, and intermediate-result reuse; GPU-memory allocation or partitioning; movement of inputs from CPU, host, storage, sensor, camera, or network sources into GPU memory; and storage, transfer, accumulation, reuse, or return of outputs and intermediate results. They target the memory-management and data-transfer limitations at the heart of the Asserted Claims.

- **Requests 11–12** seek documents sufficient to show how GPU computations are scheduled, ordered, queued, synchronized, parallelized, launched, interrupted, resumed, and executed, and how inputs, commands, model or parameter changes, interruptions, or output changes affect GPU-queue placement. They target the claimed coordination and control of GPU computations.

These requests thus target the facts relevant to whether OpenAI's systems perform the asserted method steps and whether NVIDIA's software, instructions, and support cause or encourage that use. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321–22, 1333-34 (Fed. Cir. 2009) (stating patentee must show all steps of claimed method were performed to prove indirect infringement and that damages "ought to be correlated, in some respect, to the extent the infringing method is used by" directly infringing third parties); *FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130, at *5 (D. Del. Apr. 11, 2022) ("[I]t is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *3 (S.D. Cal. Aug. 29, 2011) ("The Court finds the information sought in the subpoenas is relevant to NuVasive's claim of induced infringement and damages therefrom.").

The requests are also bounded and particular. Each seeks only documents "sufficient to show" an identified technical fact. Exhibit 5 at 12. The Subpoena is limited to September 13, 2018

to the present and to U.S.-based or U.S.-directed activity. *Id.* It does not seek every document mentioning NVIDIA, a wholesale source-code production, or information about products OpenAI does not use.

**The five deposition topics** seek testimony on the same subjects as the document requests and directs OpenAI to designate one or more knowledgeable persons on five topics.

- **Topic 1**: the NVIDIA software and libraries OpenAI uses to perform computations on NVIDIA GPUs;
- **Topic 2**: NVIDIA sample source code OpenAI uses, in whole or in part;
- **Topic 3**: OpenAI's customizations and data inputs that alter how NVIDIA software performs computations;
- **Topic 4**: identification of OpenAI software that uses NVIDIA GPUs to perform computations; and
- **Topic 5**: how output and intermediate GPU results are stored, referenced by pointers, transferred, copied, streamed, written back, returned, accumulated, reused, or otherwise made available between GPU memory and CPU, host, system, storage, display, network, or other memory locations.

These topics ask who, what, and how, and are directly relevant to whether OpenAI's real-world systems perform the asserted methods and whether NVIDIA's products and instructions induce that use. NVIDIA cannot testify to OpenAI's internal configurations, customizations, data inputs, or operating practices. The testimony is also proportional because it is limited to five topics that track the twelve document requests and the same defined period and U.S. nexus.

Moreover, NAI offered a sworn declaration as an alternative to document discovery and a limitation on deposition testimony. *See* Exhibit 14. A revised declaration could confirm or deny core deployment facts, eliminate requests that do not apply, and reduce or avoid both collection and testimony. That compromise shows NAI sought the information, not unnecessary burden. OpenAI declined it without committing to equivalent discovery and cannot invoke the burden NAI tried to avoid as a reason to provide no documents or testimony at all.

The information is central to infringement and damages, NAI's need is substantial, and the requests and topics are particular and time-limited. The evidence is uniquely within OpenAI's

possession, and NAI repeatedly proposed narrower means of compliance. OpenAI has offered no concrete evidence of burden, proposed no narrowing, and identified no alternative production. Boilerplate objections do not authorize a non-party to withhold all discovery, and the requests are proportional to the needs of the Underlying Action and should be compelled.

### B. OpenAI Has Not Substantiated Burden and NAI Offered Narrower Alternatives.

OpenAI's written objections to burden are inadequate because they do not "state with specificity" the burden OpenAI would face in producing responsive documents. *611 Carpenter LLC*, 2024 WL 1977160, at *1. OpenAI's objections are boilerplate and repetitive. For each of the twelve document requests, OpenAI raised the same litany of objections—unduly burdensome, overbroad, vague and ambiguous, not proportional, seeks confidential information, seeks information in the possession of a party—and concluded by refusing production. *See* Exhibit 9. OpenAI similarly refused to designate a witness on all five deposition topics, repeating the same objections nearly verbatim. *See* Exhibit 10. These boilerplate objections, absent evidence of burden, do not show that the burden of complying with the subpoena is undue and cannot outweigh the relevance of the discovery sought.

OpenAI also objected that the Subpoenas are overbroad because the definition of "NVIDIA GPUs" lists more than 200 purported devices. *See* Exhibit 9 at 4. That breadth reflects the scope of NVIDIA's accused product line. NAI's infringement contentions identify those same GPU architectures as Accused Products. *See* Exhibit 7 at 2–9.

The Subpoenas seek documents "sufficient to show" identified technical facts about the NVIDIA products OpenAI actually deploys. They do not require OpenAI to identify every GPU it has ever used. OpenAI further objected that certain requests are interrogatories disguised as document requests. *See* Exhibit 9. That objection is meritless. Requests framed as "documents sufficient to show" a particular fact are a standard and accepted formulation under Rule 34 and are routinely used in third-party subpoenas precisely because they reduce the burden on the recipient by allowing the recipient to choose the most efficient means of demonstrating the relevant fact.

Further, NAI took substantial steps to minimize OpenAI's burden. NAI first spent months pursuing this information directly from NVIDIA, turning to third-party discovery only after NVIDIA repeatedly represented that it lacked information concerning how customers and end users deploy its accused hardware and software. After serving the Subpoenas, NAI agreed to a one-week extension for OpenAI's responses, identified the products and systems it believed were implicated, explained the technical issues, supplied focused questions that could eliminate irrelevant product paths, and provided a draft declaration that OpenAI could revise as an alternative to document discovery. *See* Exhibits 11–14.

OpenAI will likely respond that NAI refused to narrow its requests, but that is incorrect. NAI's proposed declaration itself substantially narrowed the discovery by identifying the specific information necessary to resolve the dispute without document production or a deposition. *See* Exhibit 14. NAI also offered an additional compromise: if OpenAI would not provide the requested declaration, it could instead produce documents sufficient to address each of the discrete issues identified in the declaration. Exhibit 26. OpenAI flatly refused that proposal as well and offered no narrower alternative of its own. Exhibit 27. OpenAI therefore cannot manufacture undue burden by rejecting NAI's efforts to narrow the discovery and then characterize NAI as unwilling to compromise. OpenAI has not paired its objections with a concrete proposal, defined search, production date, revised declaration, or witness.

## III. CONCLUSION

For the foregoing reasons, NAI requests that this Court (1) compel OpenAI to produce nonprivileged documents responsive to Requests for Production Nos. 1–12 on a rolling basis to begin within 7 days of the Court's order and to complete production within twenty-one (21) days of the Court's order, and (2) compel OpenAI to designate and produce a knowledgeable witness on Deposition Topics 1–5 within thirty (30) days of the Court's order.

Dated: August 17, 2026

Respectfully submitted,

*/s/ Tanner Laiche*

Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
CA State Bar 344342
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorneys for Petitioner Neural AI, LLC*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on August 17, 2026, a true and correct copy of the foregoing document was served on counsel for OAI International, Inc. and all counsel of record in the underlying action.

*/s/ Tanner Laiche*
Tanner Laiche

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for Neural AI, LLC conferred in good faith with counsel for non-party OAI International, Inc. regarding the issues raised in this Motion, including through Zoom conferences on or about July 22, 2026 and August 14, 2026, and related email correspondence. Despite those efforts, the parties were unable to resolve the dispute.

*/s/ Tanner Laiche*
Tanner Laiche