# EXHIBIT

# 7

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| NEURAL AI, LLC<br><br>Plaintiff,<br>v.<br><br>NVIDIA CORPORATION<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 7:24-cv-00221<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S AMENDED DISCLOSURE OF ASSERTED CLAIMS AND FINAL INFRINGEMENT CONTENTIONS PURSUANT TO THE COURT'S STANDING ORDER GOVERNING PATENT PROCEEDINGS**

Pursuant to the Court's December 2, 2025 Order (Dkt. 132), the First Amended Scheduling Order (Dkt. 135), and the Parties December 29, 2025 Joint Stipulation (Dkt. 136), Plaintiff Neural AI, LLC ("Neural AI" or "Plaintiff") provides the following Disclosure of Asserted Claims and Final Infringement Contentions ("Disclosure") as to U.S. Patent Nos. 8,648,867 ("the '867 Patent"), RE49,461 ("the '461 Patent"), and RE48,438 ("the '438 Patent") (collectively, the "Asserted Patents" or "Patents-in-Suit") against Defendant Nvidia Corporation ("Nvidia" or "Defendant"). This Disclosure is made solely for the purpose of this action.

Pursuant to the Court's December 2, 2025 Order (Dkt. 132), Plaintiff identifies source code for each accused instrumentality based on Nvidia's productions prior to November 30, 2025. Nvidia continues to produce source code on a rolling basis. Plaintiff therefore expressly reserves the right to serve additional or supplemental claim chart exhibits identifying newly produced or previously unavailable source code that satisfies the asserted claim elements, including after service of this Disclosure. Moreover, Plaintiff's investigation regarding infringement and additional potential grounds of infringement is ongoing. Nvidia's has not produced all necessary

technical documents or source code sufficient to show the operation of the Accused Products, and key categories of technical materials, including source code, remain outstanding. *See, e.g.,* Dkt. 103, 125. This Disclosure is therefore based upon information that Plaintiff has been able to obtain and review to date, together with its good-faith beliefs regarding the Accused Products and their operation, and is made without prejudice to Plaintiff's right to supplement or amend its Disclosure as additional facts are ascertained, discovery is conducted, code is reviewed, analysis is done, and research is completed. Plaintiff reserves the right to amend and/or supplement its infringement contentions as additional information becomes available.

For each Asserted Patent, Plaintiff identifies the following Accused Products of which it is currently aware. The identification of Accused Products is based on Plaintiff's research and analysis to date, without the benefit of full discovery. Indeed, Nvidia has not yet complied with its obligation under the OGP to produce sufficient "technical documents, including software where applicable, sufficient to show the operation of the accused product(s)." *See, e.g.*, Dkt. 103, 125. Nvidia has continued to belatedly produce source code well into the fact discovery period—including most recently on January 13, 2026—and has not produced related technical documents, and Plaintiff has been required to repeatedly press Nvidia to obtain these late and piecemeal productions. As a result, Plaintiff's current identification of Accused Products is necessarily based on publicly available and otherwise accessible information. Accordingly, Plaintiff's current identification is based on publicly available and otherwise accessible information. Plaintiff expressly reserves the right to amend or supplement these contentions—including by identifying additional Accused Products or asserting additional bases for infringement—under the applicable rules and any Court orders, including to reflect future productions by Nvidia.

**Accused Products.** The Accused Products, as described in the accompanying Exhibits 1–599 and any later-served amended or supplemental Exhibits, comprise integrated combinations of

Nvidia's software and hardware that together implement GPU-accelerated computing. These include Nvidia's GPU accelerators and superchips; Nvidia's computers, supercomputers, data centers, servers, and workstations incorporating those GPUs; and the full Nvidia software stack that operates on and controls that hardware to enable accelerated execution.

Based on its present understanding of Nvidia's infringing software architecture and how the accused functionality is implemented across Nvidia's integrated hardware and software stack, Neural AI has organized its infringement charts by Nvidia application in Exhibits 100-199. These application charts further reference sub-charts identifying hardware described in Exhibits 1-99 as well as software and libraries described in Exhibits 200-599. The sub charts are broken out as follows: Exhibits 1–99 include hardware such as Nvidia's GPU accelerators and superchips, and Nvidia's computers, supercomputers, data centers, servers, workstations that implement its GPU accelerators and superchips, coupling of some of this hardware to CPUs, as well as information on Nvidia's infringing software products and CUDA code. Exhibits 100-199 include Nvidia's application frameworks and platforms. Application frameworks and platforms processed by the hardware, in turn, call on lower-level Nvidia software. Exhibits 200–299 include Nvidia's machine-learning frameworks and inference platforms used by these applications, including PyTorch and TensorRT. Exhibits 300–399 include Nvidia's neural-network primitive libraries, acceleration libraries, and functions, including cuDNN and related components. Exhibits 400–499 include Nvidia's mathematical libraries. Exhibits 500–599 include low-level CUDA runtime, driver, memory-management components, memory maps, and sub-component code used in the CUDA stack.

This organization reflects Neural AI's present understanding of Nvidia's software architecture. Nvidia has not produced a complete source-code production for any bucket or category, and Neural AI therefore expressly reserves the right to chart additional software,

libraries, or components, and to modify or supplement its chart organization and infringement theories as discovery continues. Moreover, the charts provided within each category are representative of other similar Nvidia software, libraries, and components within that same category. Neural AI has charted exemplar implementations rather than every produced file, and reserves the right to rely on other Nvidia software and libraries within the same category as additional accused instrumentalities.

In further details, the Accused Products include, without limitation, the following: Nvidia's GPU accelerators and superchips, including those with Nvidia's "Blackwell," "Hopper," "Ada Lovelace," "Ampere," "Turing," "Volta," "Pascal," and "Maxwell" GPU architectures. These GPUs and superchips implement, and are specifically designed for, GPU-acceleration for artificial intelligence and neural networks.

Nvidia's Blackwell GPUs include RTX PRO 6000 Server Edition, RTX PRO 6000 Workstation, RTX PRO 6000 Max-Q Workstation, RTX PRO 6000, RTX PRO 5000, RTX PRO 4500, RTX PRO 4000, RTX PRO 3000, RTX PRO 2000, RTX PRO 1000, RTX PRO 500, RTX 5090, RTX 5090 D, RTX 5080, RTX 5070 Ti, RTX 5070, RTX 5060, RTX 5060 Ti, RTX 5050, RTX 5080 Laptop, RTX 5090 Laptop, RTX 5070 Ti Laptop, RTX 5060 Laptop, RTX 5070 Laptop, and RTX 5050 Laptop. In addition, Nvidia's superchips that implement GPU accelerators include the GB300 and GB200.

Nvidia's Hopper GPUs include the H100 and H200 GPUs, including by not limited to PCle, SXM, and NVL models. In addition, Nvidia's superchips that implement GPU accelerators include the GH200, or Grace Hopper Superchip, which implements the Hopper-GPU architecture.

Nvidia's Ada Lovelace (or Lovelace) GPUs include Nvidia Data Center GPUs, including L40, L40S, and L4 GPUs; Nvidia Workstation and Professional Laptop GPUs, including RTX Ada Generations series GPUs and Laptop GPUs (including RTX 6000, RTX 6000 Ada, RTX 5000

Ada, RTX 4500 Ada, RTX 4050, RTX 4000 Ada, RTX 4000 SFF, RTX 3500, RTX 3050, RTX 3000, RTX 2000, RTX 1000, RTX 500); and GeForce RTX 40 series GPUs and Laptop GPUs (RTX 4090, RTX 4080 SUPER, RTX 4070 Ti SUPER, RTX 4070 SUPER, RTX 4070, RTX 4060 Ti, and RTX 4060; GeForce RTX 4090 Laptop GPU, GeForce RTX 4080 Laptop GPU, GeForce RTX 4070 Laptop GPU, GeForce RTX 4060 Laptop GPU, GeForce RTX 4050 Laptop GPU).

Nvidia's Ampere GPUs include Nvidia Data Center GPUs, including A100, A40, A30, A16, A10, and A2 GPUs; Nvidia Workstation and Professional Laptop GPUs, including RTX A series GPUs and Laptop GPUs (A800 40GB Active, RTX A6000, RTX A5500, RTX A5000, RTX A4500, RTX A4000, RTX A2000, RTX A2000 12GB, RTX A1000, RTX A400, RTX A5500, RTX A4500, RTX A3000 12GB, RTX A2000 8GB, RTX A1000 6GB, RTX A500); GeForce RTX 30 series GPUs and Laptop GPUs (GeForce RTX 3090 Ti, GeForce RTX 3090, GeForce RTX 3080 Ti, GeForce RTX 3080, GeForce RTX 3070 Ti, GeForce RTX 3070, GeForce RTX 3060 Ti, GeForce RTX 3060, GeForce RTX 3050 (8 GB), GeForce RTX 3050 (6 GB), GeForce RTX 3080 Ti Laptop GPU, GeForce RTX 3080 Laptop GPU, GeForce RTX 3070 Ti Laptop GPU, GeForce RTX 3070 Laptop GPU, GeForce RTX 3060 Laptop GPU, GeForce RTX 3050 Ti Laptop GPU, GeForce RTX 3050 Laptop GPU); and GeForce MX570 Laptop GPU.

Nvidia's Turing GPUs include Nvidia Data Center GPUs, including Tesla T4 GPUs and Quadro RTX 8000 (passive) and Quadro RTX 6000 (passive) GPUs; Nvidia Workstation and Professional Laptop GPUs, including T series GPUs and Laptop GPUs, Quadro T series Laptop GPUs, and Quadro RTX series GPUs and Laptop GPUs (Quadro RTX 8000, Quadro RTX 6000, Quadro RTX 5000, Quadro RTX 4000, Quadro RTX 3000, Quadro T2000, T1000 8GB, T1200, Quadrio T1000, T1000 (4GB), T600, T550, T500 T400, T400 4GB); Titan series Titan RTX GPU; GeForce RTX 20 series GPUs and Laptop GPUs (GeForce RTX 2080 Ti, GeForce RTX 2080 Super, GeForce RTX 2080, GeForce RTX 2070 Super, GeForce RTX 2070, GeForce RTX 2060

Super, GeForce RTX 2060, GeForce RTX 2500); GeForce GTX 16 series GPUs and Laptop GPUs (GeForce GTX 1660 Ti, GeForce GTX 1660 Super, GeForce GTX 1660, GeForce GTX 1650 Ti, GeForce GTX 1650 Super, GeForce GTX 1650 (G5), GeForce GTX 1650 (G6), GeForce GTX 1650, GeForce GTX 1630); and GeForce MX550, MX450, and MX430 Laptop GPUs.

Nvidia's Volta GPUs include Nvidia Data Center GPUs, including the Tesla V100 GPU; Nvidia Workstation GPUs, including Quadro GV100; and Titan series Titan V GPU.

Nvidia's Pascal GPUs include Nvidia Data Center GPUs, including Tesla P100, P40, and P4 GPUs; Nvidia Workstation and Professional Laptop GPUs, including the Quadro GP100 GPU and Quadro P series GPUs and Laptop GPUs (Quadro P6000, Quadro P5200, Quadro P5000, Quadro P4200, Quadro P4000, Quadro P3200, Quadro P3000, Quadro P2200, Quadro P2000, Quadro P1000, Quadro P620, Quadro P600, Quadro P520, Quadro P500, Quadro P400); Titan series Titan Xp and Titan X GPUs; GeForce GTX 10 series GPUs and Laptop GPUs (GeForce GTX 1080 Ti, GeForce GTX 1080, GeForce GTX 1070 Ti, GeForce GTX 1070, GeForce GTX 1060, GeForce GTX 1050 Ti, GeForce GTX 1050); and GeForce MX300 series, MX200 series, and MX150 Laptop GPUs.

Nvidia's Maxwell GPUs include Nvidia Data Center GPUs, including Tesla M60, M40, and M10 GPUs; Nvidia Workstation and Professional Laptop GPUs, including Quadro M series GPUs and Laptop GPUs (Quadro M6000 24GB, Quadro M6000 (12GB), Quadro M5000, Quadro M5000M, Quadro M5500, Quadro M4000, Quadro M4000M, Quadro M3000M, Quadro M2200, Quadro M2000, Quadro M2000M, Quadro M1200, Quadro M1000M, Quadro M620, Quadro M600M, Quadro M520, Quadro M500M), the NVS 810 GPU, and Tesla M6 series Laptop GPUs; Titan series GTX Titan X GPU; GeForce GTX 900 series GPUs and Laptop GPUs (GeForce GTX 980Ti, GeForce GTX 980, GeForce GTX 970, GeForce GTX 960, GeForce GTX 980M, GeForce GTX 970M, GeForce GTX 965M, GeForce GTX 960M, GeForce GTX 950M); GeForce GTX

700 series GPUs and Laptop GPUs (GeForce GTX 750 Ti, GeForce GTX 750); and GeForce MX130 series and MX110 Laptop GPUs.

The Accused Products further include Nvidia's computers, supercomputers, data centers, servers, and workstations that implement its GPU accelerators and superchips. These computer hardware systems include: the DGX line of supercomputers, the HGX line of supercomputers, the OVX line of supercomputers, and the EGX line of servers for data centers and edge devices. Nvidia's DGX supercomputers include the DGX B300, DGX B200, DGX GB200, DGX GB300, DGX Spark, DGX Station, DGX SuperPOD with GB300, DGX SuperPOD with GB200, DGX H200, DGX BasePOD, DGX A100, and DGX SuperPOD with DGX GB200. Nvidia's HGX includes least the HGX B300, HGX B200, HGX H100, HGX H200, and EoS SuperPOD. And Nvidia's EGX includes at least EGX Server with Quadro RTX A6000, EGX Server with A40, EGX Server with Quadro RTX 8000, EGX Server with Quadro RTX 6000), GB300 NVL72, GB200 NVL72.

The Accused Products include Nvidia's software, platforms, libraries, and services for accelerated computing. These products include, without limitation, application frameworks, platforms, and domains such as NVIDIA Drive, Isaac, Holoscan, RAPIDS, NVBlox, NeMo, Merlin, Modulus, MONAI, Morpheus, Riva, Maxine, Clara, Metropolis, Tokkio, Avatar, NIM Microservices, Omniverse, Clara Train, TAO, DRIVE Sim, DLSS, PhysX, OptiX, Texture Tools, JetPack, DeepStream, DOCA, Magnum IO, Aerial, BioNeMo, CUDA-X HPC, Unified Compute Framework, AI Enterprise, the DGX Platform, NGC, and AI Foundation Models. Application frameworks and platforms processed by the hardware, in turn, call on lower-level Nvidia software. The Accused Products further include machine-learning frameworks and inference platforms such as PyTorch, TensorRT, Triton, TensorFlow, Torch-TensorRT, JAX, and Spark. They also include neural-network, mathematical, and acceleration libraries such as cuDNN, cuFFT, cuDSS,

cuSOLVER, cuRAND, CUTLASS, DALI, cuTensor, cuGraph, cuSPARSELt, NPP, NeuralVDB, cuNumeric, cuCIM, Sionna, cuBLAS, cuSPARSE, NCCL, Thrust, CUB, AmgX, and nvmath-python. The Accused Products further include low-level CUDA runtime, driver, and system components, including CUDA, the CUDA Toolkit, CUDA Runtime and Driver components, CUDA Python, CUDA Quantum, Base Command, GPNVAPI, NVSHMEM, DCGM, Displaced Micro-Mesh, FLARE, GVDB Voxels, KickstartRT, Mesh Shading, Optical Flow, PTX, SASS, kernel implementations, firmware, scheduling logic, backend libraries, the CUDA Driver Internal Layer (CUI), CUDA Driver API, vGPU, GPUDirect, NVML, and other associated runtime, driver, and sub-component code. The Accused Products further include other Nvidia software, platforms, and services that implement similar accelerated computing functionality or operate using the same CUDA-based execution models, architectures, libraries, and runtime components, whether or not expressly listed above. The Accused Products also encompass associated and underlying software libraries and components that enable or support accelerated execution and any source code or sub-component code necessary to understand or effect CUDA execution, whether or not separately analyzed.

The Accused Products further include (1) any additional products identified in the accompanying Exhibits 1–599 attached hereto and any later-served amended or supplemental Exhibits; (2) any products that include the same functionality or features described in the Exhibits; and (3) any prior or subsequent versions of the products identified in the Exhibits that include the same features or functionality.

The Accused Products infringe each of the Asserted Patents in a manner fully consistent with the Court's Claim Construction Order (Dkt. 95). For example, as construed, the Accused Products implement the claimed "accelerator" as hardware, software, or a combination thereof that need not be physically separate from the CPU. The Accused Products likewise perform the claimed

method steps in a pipelined and overlapping manner that satisfies the Court's ordering requirements for the asserted claims of the '867 and '438 patents, including parallel execution where permitted and the specific sequencing constraints identified by the Court.

On information and belief, the asserted claim elements charted for one chip architecture are evidenced by documentation and source code pertaining to the Accused Products for other chip architectures, for which the Accused Products have capabilities and functionalities that are substantially the same for the asserted claim elements. Indeed, this is reflected by the different chip architectures of the Accused Products sharing materially similar technical specifications and overlapping documentation as each Accused Product pertains to the accused claim elements. Likewise, the software implementations analyzed and charted are representative of other related Nvidia software products that rely on the same CUDA-based execution models, libraries, runtime components, and architectural design choices, and that therefore implement the asserted claim elements in substantially the same manner such as, for example, performing a math operation or computation in a neural network.

The present infringement contentions also accuse Nvidia's newly announced Vera CPU and Rubin GPU products. Neural AI will supplement its infringement contentions as Nvidia produces additional information and as these products become commercially available. The present infringement contentions further accuse Nvidia's **Jetson** hardware products, which, based on information obtained during ongoing fact and expert discovery, infringe one or more Asserted Claims. Neural AI will supplement its infringement contentions as Nvidia produces additional information regarding these products.

These Final Infringement Contentions are based on public evidence and the limited discovery and source code made available by Nvidia to date, which largely consists of a single software version for each accused application or library. Nvidia's has not produced all necessary

technical documents or source code sufficient to show the operation of the Accused Products, and key categories of technical materials and code remain outstanding. *See, e.g.*, Dkt. 103, 125. Discovery and expert analysis are ongoing and include, among other things, the multiple software versions and builds that may be used in combination, as well as additional libraries and software functions that infringe the asserted claims under the same theories reflected in the claim charts. These include, for example, acceleration libraries and functions that infringe the claims in the same manner as the cuDNN CTCLoss and RNNForward functions in the two cuDNN source-code versions produced by Nvidia. Accordingly, Plaintiff expressly reserves the right to amend, supplement, or refine these contentions as additional facts are ascertained, discovery is conducted, analysis is performed, and research is completed. Plaintiff further reserves the right to amend or supplement its Disclosure under the applicable rules and any Court orders, including to reflect future productions by Nvidia.

**Defendant's Infringement.** Based upon currently available information, Plaintiff identifies the following asserted claims:

- The '867 Patent. Defendant has infringed and is infringing claims 16-19, literally and/or under the doctrine of equivalents. Defendant has infringed and is infringing these claims both directly and indirectly (by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or by contributing to infringement pursuant to 35 U.S.C.§ 271(c)).
- The '461 Patent. Defendant has infringed and is infringing claims 21-25, 27-30, literally and/or under the doctrine of equivalents. Defendant has infringed and is infringing these claims both directly and indirectly (by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or by contributing to infringement pursuant to 35 U.S.C.§ 271(c)).
- The '438 Patent. Defendant has infringed and is infringing claims 1, 3-6, 8-9, 12, 14,

17-18, 21-23, 29-30, 32, 40, 43-44, 46, 48, 51-52, 55-57, literally and/or under the doctrine of equivalents. Defendant has infringed and is infringing these claims both directly and indirectly (by inducing infringement pursuant to 35 U.S.C. § 271(b) and/or by contributing to infringement pursuant to 35 U.S.C. § 271(c)).

Based upon currently available information, Plaintiff asserts that Defendant has infringed and/or continues to infringe the patents and claims as identified and described in the infringement charts for the Accused Products attached as the accompanying Exhibits 1–599 and any later-served amended or supplemental Exhibits. These exhibits contain illustrative examples of Defendant's presently known infringement of the Asserted Claims by evidencing the correspondence between (i) elements of the Asserted Claims and (ii) corresponding structures and/or functions of the Accused Products. Such examples are illustrative and not exhaustive, additional materials may evidence infringement, and additional bases of infringement may be present and uncovered during discovery. Plaintiff reserves the right to amend or supplement its Disclosure, including the attached claim charts, upon Nvidia's compliance with its discovery obligations.

Each element of each asserted claim is presently alleged to be literally present. However, to the extent Defendant argues that a limitation is not literally present in the Accused Products, then Defendant still infringes under the doctrine of equivalents. Any differences alleged to exist between any of the Asserted Claims and any of the Accused Products are insubstantial, and therefore each Accused Product also meets each limitation under the doctrine of equivalents, as the identified features of the Accused Product perform substantially the same function in substantially the same way to achieve substantially the same result as the corresponding claim limitations. Plaintiff reserves the right to supplement this Disclosure as discovery is conducted, Defendant provides any alleged non-infringement positions, and claim construction is completed.

Defendant directly infringes each of the asserted claims under 35 U.S.C. §271(a) at least

by using, operating, testing, advertising, making, installing, maintaining, distributing, supporting, providing instructions for, offering to sell, selling, and/or otherwise providing services including the Accused Products—or systems incorporating the Accused Products—within the United States and/or importing the Accused Products into the United States. Defendant also directly infringes each of the claims at least by performing, or being responsible for the performance of (e.g., the acts are attributable to it), each of the claimed steps as set forth in the accompanying charts. Defendant's acts of direct infringement are further set forth in the accompanying Exhibits and any later-served amended or supplemental Exhibits.

Defendant also indirectly infringes the Asserted Claims by inducing infringement pursuant to 35 U.S.C. § 271(b)). Defendant has had knowledge of each of the asserted patents and of the specific manner by which the Accused Products infringe each patent since at least September 2024, when Plaintiff filed and served its original complaint. Defendant knowingly induced one or more third parties (e.g., business partners, customers, or others), to infringe the Asserted Claims by making the Accused Products available on Defendant's website, widely advertising the Accused Products, providing applications that allow partners and users to access the Accused Products, providing instructions for installing the Accused Products, and providing technical support to users and/or engaging in activities that aid and abet infringement of the Asserted Patents by end users within the United States, with knowledge and intent that performance of such actions would infringe the Asserted Claims. Defendant committed these acts with knowledge or willful blindness that such induced acts would constitute infringement of the Asserted Claims at least as of the filing of the original complaint. Defendant also has had actual or constructive notice of the technology claimed in the Asserted Patents since at least 2007, when the inventors of the Asserted Patents first discussed their patented technologies with Mr. Sanford Russell, then the CTO of Nvidia. In addition, the inventors of the Asserted Patents held multiple discussions with Nvidia regarding a

potential investment in or acquisition of their company, Neurala, Inc., and its assets, including the patent family that includes the Asserted Patents. Defendant knew or should have known that it infringed the Asserted Patents based on its knowledge of the same. Alternatively or additionally, Defendant was willfully blind to the fact that it infringed the Asserted Patents despite its knowledge of the same, based on, for example, Defendant's having cited the application for the '867 Patent on the face of its own patent since at least June 28, 2010, *see* Nvidia U.S. Patent No. 8,922,566, and the similarity of the Accused Products to Plaintiff's patented technology. Additional evidence of Defendant's inducement of infringement by others is set forth in each of accompanying Exhibits.

Defendant also indirectly infringes the Asserted Claims by contributing to infringement pursuant to 35 U.S.C. § 271(c). Each of the Accused Products is a material part of the claims, and Defendant knew each of the Accused Products is especially made or especially adapted for use in an infringement of the Asserted Claims. Further, the Accused Products have no substantial non-infringing uses, as set forth in the example claim charts.

Defendant also contributes to infringement by its customers and end users of the Accused Products by offering to sell or selling within the United States or importing into the United States the Accused Products, which are for use in practicing, and under normal operation practice, methods claimed in the Asserted Patents, constituting a material part of the inventions claimed, and not a staple article or commodity of commerce suitable for substantial non-infringing use. Indeed, the Accused Products and the exemplary functionality identified in the accompanying Exhibits have no substantial non-infringing uses but instead are specifically designed to practice the Asserted Patents. Additional evidence of Defendant's contributory infringement is set forth in each of the Exhibits and any later-served amended or supplemental Exhibits.

**Priority Dates.** Plaintiff presently identifies the following priority dates for the Asserted

Patents:

- All Asserted Claims of the ’867 Patent are entitled to a priority date corresponding to the conception of the claimed inventions, which occurred no later than February 25, 2005. The conception of the inventions claimed in the ’867 Patent was followed by continuous diligence and actual reduction to practice of the claimed inventions no later than December 14, 2005. Following the actual reduction to practice of the claimed invention, there was constructive reduction to practice corresponding to the filing of U.S. Provisional Application No. 60/826,892 on September 25, 2006. *See* NAI_0007731-NAI_0007923.
- All Asserted Claims of the ’461 Patent are entitled to a priority date corresponding to the conception of the claimed inventions, which occurred no later than February 25, 2005. The conception of the inventions claimed in the ’461 Patent was followed by continuous diligence and actual reduction to practice of the claimed inventions no later than December 14, 2005. Following the actual reduction to practice of the claimed inventions, there was constructive reduction to practice corresponding to the filing of U.S. Provisional Application No. 60/826,892 on September 25, 2006. *See* NAI_0007731-NAI_0007923.
- All Asserted Claims of the ’438 Patent are entitled to a priority date corresponding to the conception of the claimed inventions, which occurred no later than February 25, 2005. The conception of the inventions claimed in the ’438 Patent was followed by continuous diligence and actual reduction to practice of the claimed inventions no later than December 14, 2005. Following the actual reduction to practice of the claimed inventions, there was constructive reduction to practice corresponding to the filing of U.S. Provisional Application No. 60/826,892 on September 25, 2006.

*See* NAI_0007731-NAI_0007923.

Plaintiff's investigation and analysis is ongoing, and Plaintiff reserves the right to assert and rely on an earlier invention date in the event Defendant identifies alleged prior art that dated earlier than the identified priority date corresponding to a date of conception followed by diligence and reduction to practice of the claimed inventions.

DATED: January 20, 2026

Respectfully submitted,

/s/ *Tanner Laiche*
Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

Mark D. Siegmund
Texas State Bar No. 24117055
CHERRY JOHSON SIEGMUND
JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
msiegmund@cjsjlaw.com

Max Ciccarelli
Texas State Bar No. 00787242
CICCARELLI LAW FIRM LLC
100 N. 6th Street, Suite 502
Waco, Texas 76701
Max@CiccarelliLawFirm.com

*Attorneys for Plaintiff Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on January 20, 2026 to all counsel of record via electronic mail.

/s/ *Tanner Laiche*
Tanner Laiche