# EXHIBIT

# 21

Warren LLP

Warren LLP
2261 Market Street, No. 606
San Francisco, California 94114

TEL +1 (415) 895 2940
FAX +1 (415) 895 2964
warrenllp.com

August 7, 2026

**By Electronic Mail**

Tanner Laiche
Susman Godfrey LLP
401 Union Street
Seattle, Washington, 98101
tlaiche@susmangodfrey.com

**Re: Neural AI, LLC v. NVIDIA Corporation, No. 24-221 (W.D. Texas)**

Dear Mr. Laiche:

I write on behalf of non-party OAI International, Inc., in response to your email of this past Wednesday, August 5. Your email states that, "[b]ecause document discovery in the underlying action closes on August 11, Neural AI must be prepared to move to compel on Monday, August 10, to preserve its rights." But any urgency is due to Neural AI's own strategic decisions, and Neural AI should not benefit from engineering its own emergency.

Fact discovery in the underlying action opened on July 30, 2025. But Neural AI did not serve any subpoenas on OAI International until June 25, 2026, almost a year later. (Your email mentioned June 24, but that is the date on the subpoenas and not their date of service.) You have not explained Neural AI's lengthy initial delay or how it was reasonable, and we cannot see how it was. Neural AI's failure to issue prompt subpoenas, by itself, dooms any claim of emergency here.

But that was not Neural AI's only failure. When it served its June 25 subpoenas on OAI International, Neural AI designated a place of compliance in Austin, Texas, far from OAI International's publicly listed headquarters address in San Francisco, California. Neural AI's strategic decision to ignore OAI International's publicly listed headquarters address and designate a place of compliance in Austin, Texas rendered the subpoenas facially invalid. OAI International objected on these grounds among others. When I met and conferred with Mr. Magni on Wednesday, July 22, I did you the courtesy of emphasizing this objection, noting that we believed the subpoenas were invalid for this reason and could not compromise on that point, but that we would not object on these grounds to subpoenas with a place of compliance in San Francisco.

Your email states that I "declined to engage substantively regarding the requests and topics based on that alleged enforceability issue," but that is incorrect: although I told Mr. Magni that the June 25 subpoenas were void on their face for failure to specify a proper place of compliance, I also noted that they were overbroad and unduly burdensome, and appeared calculated to shift Neural AI's burden onto OAI International by seeking information about alleged infringement without having any basis to believe that any alleged infringement existed. I suggested that, as a first step in meeting and conferring, Neural AI should limit its requests to what it truly required, and should explain why it needed this information for the underlying action, and why the information it needed must come from non-party OAI International.

We then returned to the subpoenas' asserted place of compliance. Mr. Magni stated that Neural AI would send me evidence showing the propriety of its asserted place of compliance. I said I welcomed that evidence. Instead, on July 24, Neural AI served a new set of subpoenas. The July 24 subpoenas had a place of compliance in San Francisco, but otherwise suffered from the same flaws as the June 25 subpoenas, by seeking to shift work from plaintiff Neural AI to non-party OAI International.

Your email of this past Wednesday, August 5, further reinforces our view that Neural AI is improperly seeking to shift its burden onto non-party OAI International, Inc. Your email includes a lengthy list of "questions intended to guide OpenAI's investigation" and a proposed declaration, but those documents bear little relation to the contents of the subpoenas, and serve only to confirm that Neural AI is on a fishing expedition, with no idea whether the subpoenas would reveal any alleged infringement or not. Your letter closes with an offer to meet and confer, but that offer is meaningless in light of your confirmation that you will move to compel on Monday.

As I told Mr. Magni on July 22, if Neural AI is seeking discovery rather than a fight, it will provide OAI International with a focused list of the information Neural AI believes is truly required for the prosecution of this action, along with a clear explanation of why it needs this information for the litigation, as well as why it needs this information specifically from non-party OAI International, Inc., and cannot obtain it from any other source. I encourage you to do so rather than file a motion to compel. But if Neural AI insists on filing a motion to compel, OAI International will defend on all available grounds, including without limitation those I have set forth in this letter.

Thank you for your continued time and courtesy in this matter.

Very Truly Yours,

Matthew S. Warren