Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
DeMarcus B. T. Williams (State Bar No. 329756)
Madeline A. Woodall (State Bar No. 351664)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-221@cases.warrenllp.com

*Attorneys for Respondent OAI International, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>OAI INTERNATIONAL, INC.,<br><br>Respondent. | Case No. 3:26-mc-80261-AGT<br><br>**OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY OAI INTERNATIONAL, INC.** |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . iii

INTRODUCTION . . . 1

BACKGROUND . . . 2

A. Neural's Litigation and Its Initial Subpoenas to Amazon, Microsoft, and CoreWeave . . . 2

B. Neural's Unexplained and Inexplicable Eight-Month Delay in Serving Subpoenas . . . 2

C. Neural's Eleventh-Hour Subpoena Campaign . . . 3

D. OAI International's Objections to Neural's Initial Set of Subpoenas . . . 3

E. Neural's Second Set of Subpoenas and Its Failure to Narrow or Meaningfully Confer . . . 4

F. Neural's Final Offer Seeks Information Not Called For By Its Subpoenas . . . 5

G. Neural's Motions to Compel . . . 5

ARGUMENT . . . 5

I. Neural Failed to Comply With This Court's Local Rules . . . 5

A. Neural's Motion Failed to Comply With Local Civil Rule 37-2 . . . 5

B. Neural Failed to Comply With Local Civil Rule 11-3. . . . 7

C. Neural Failed to Comply With Local Civil Rule 5-5 . . . 7

II. Neural Served Its Subpoenas Too Late For OAI International to Comply With Them . . . 8

III. Neural Failed to Show Relevance or Proportionality . . . 9

A. Neural's Subpoenas Are a Fishing Expedition . . . 9

B. Neural's Subpoenas Are Not Proportionate to the Needs of the Underlying Case . . . 10

IV. Neural's Subpoenas are Unduly Burdensome. . . . 11

A. Document Request No. 1 . . . 11

B. Document Request No. 2 . . . 12

C. Document Request No. 3 . . . 12

D. Document Request No. 4 . . . 13

E. Document Request No. 5 . . . 13

F. Document Request No. 6 . . . 14

**TABLE OF CONTENTS**
*(continued)*


G. Document Request No. 7 . . . . . 14

H. Document Request No. 8 . . . . . 15

I. Document Request No. 9 . . . . . 15

J. Document Request No. 10 . . . . . 16

K. Document Request No. 11 . . . . . 16

L. Document Request No. 12 . . . . . 17

M. Deposition Topic No. 1 . . . . . 17

N. Deposition Topic No. 2 . . . . . 17

O. Deposition Topic No. 3 . . . . . 18

P. Deposition Topic No. 4 . . . . . 18

Q. Deposition Topic No. 5 . . . . . 18

CONCLUSION . . . . . 20

# TABLE OF AUTHORITIES


*Cases* Pages

*611 Carpenter LLC v. Atlantic Casualty Insurance Co.*,
No. 23-823, 2024 WL 1977160 (W.D. Tex. Apr. 30, 2024) . . . 11

*AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.*,
No. 19-4789, 2019 WL 3859012 (N.D. Cal. Aug. 16, 2019) . . . 8

*AngioScore, Inc. v. TriReme Med., Inc.*,
No. 12-3393, 2014 WL 6706898 (N.D. Cal. Nov. 25, 2014) . . . 8-9

*Belling v. DDP Holdings, Inc.*,
No. 12-1855, 2013 WL 12140986 (C.D. Cal. May 30, 2013) . . . 9

*Bluestone Innovations LLC v. LG Elecs. Inc*,
No. 13-1770, 2013 WL 6354419 (N.D. Cal. Dec. 5, 2013) . . . 10

*BNSF Ry. Co. v. Ctr. for Asbestos Related Disease, Inc.*,
No. 07-295, 2008 WL 2509143 (E.D. Cal. June 23, 2008) . . . 9

*Food Lion v. United Food & Commr. Workers Int'l Union*,
103 F.3d 1007 (D.C. Cir. 1997) . . . 10

*Free Stream Media Corp. v. Alphonso Inc.*,
No. 17-2107, 2017 WL 6209309 (N.D. Cal. Dec. 8, 2017) . . . 19

*Gjovik v. Apple Inc.*,
No. 23-4597, 2026 WL 1025553 (N.D. Cal. Apr. 15, 2026) . . . 8

*Hosseinzadeh v. Bellevue Park Homeowners Assn.*,
No. 18-1385, 2020 WL 3271769 (W.D. Wash. June 17, 2020) . . . 19

*Huynh v. Wal-Mart Assocs., Inc.*,
No. 18-1631, 2019 WL 13221170 (N.D. Cal. Aug. 1, 2019) . . . 11

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
123 F. Supp. 3d 1215 (N.D. Cal. 2015) . . . 9

*Koji IP, LLC v. Renesas Elecs. Am., Inc.*,
No. 24-3089, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025),
*motion for relief from judgment denied*, 2026 WL 793025 (N.D. Cal. Mar. 20, 2026) . . . 7

*Lemberg Law LLC v. Hussin*,
No. 16-80066, 2016 WL 3231300 (N.D. Cal. June 13, 2016) . . . 19

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*,
No. 15-80123, 2015 WL 2229229 (N.D. Cal. May 12, 2015) . . . 11-17

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) . . . 11

**TABLE OF AUTHORITIES**
*(continued)*


*Cases* Page

*Mori v. Baroni*,
No. 19-40, 2022 WL 1442854 (D. Mont. May 6, 2022) . . . . . 9

*Morris v. Wells Fargo & Co.*,
No. 23-3277, 2025 WL 3443504 (N.D. Cal. Dec. 1, 2025) . . . . . 17-19

*Moussouris v. Microsoft Corp.*,
No. 16-80170, 2016 WL 5870010 (N.D. Cal. Oct. 7, 2016) . . . . . 9

*Muhammad v. Koening*,
No. 24-7884, 2026 WL 2296681 (N.D. Cal. Aug. 10, 2026) . . . . . 6

*Om Recs., LLC v. OM Dev., SAS*,
No. 23-4506, 2024 WL 4100870 (N.D. Cal. Sept. 6, 2024) . . . . . 10

*Richards v. Centripetal Networks, Inc.*,
No. 23-145, 2024 WL 4375785 (N.D. Cal. Oct. 2, 2024) . . . . . 10-11

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) . . . . . 10

*Russell v. Maman*,
No. 18-6691, 2021 WL 3212646 (N.D. Cal. July 29, 2021) . . . . . 3

*Russo v. Fed. Med. Servs., Inc.*,
No. 24-748, 2024 WL 4633641 (N.D. Cal. Oct. 29, 2024) . . . . . 11

*Sanchez-Martinez v. Freitas*,
No. 22-7144, 2024 WL 4933339 (N.D. Cal. Dec. 2, 2024) . . . . . 6

*Shared P'ship v. Meta Platforms, Inc.*,
No. 22-2366, 2023 WL 2526645 (N.D. Cal. Mar. 14, 2023) . . . . . 10

*Sirota v. Penske Truck Leasing Corp.*,
No. 05-3296, 2006 WL 708910 (N.D. Cal. Mar. 17, 2006) . . . . . 9

*United States v. C.B.S., Inc.*,
666 F.2d 464 (9th Cir. 1982) . . . . . 19

*Wyles v. Sussman*,
445 F. Supp. 3d 751 (C.D. Cal. 2020) . . . . . 8

*Yotta Techs. Inc. v. Evolve Bank & Tr.*,
No. 24-6456, 2025 WL 3496685 (N.D. Cal. Dec. 5, 2025) . . . . . 6

**TABLE OF AUTHORITIES**
*(continued)*

*Statutes and Rules* — *Page*

9 *Moore's Federal Practice*, Civil § 45.21 (2026) . . . . . 8

Fed. R. Civ. P. 4 . . . . . 7

Fed. R. Civ. P. 5(b)(2)(E) . . . . . 8

Fed. R. Civ. P. 26(b)(1) . . . . . 9

Fed. R. Civ. P. 26(b)(2) . . . . . 6

Fed. R. Civ. P. 45(c)(2) . . . . . 8

Fed. R. Civ. P. 45(d)(3) . . . . . 8-9, 11

Fed. R. Civ. P. 45(d)(3)(A)(i) . . . . . 8

Loc. Civ. R. 5-5(b) . . . . . 7

Loc. Civ. R. 7 . . . . . 6

Loc. Civ. R. 11-3 . . . . . 7

Loc. Civ. R. 37-2 . . . . . 2, 5-6

E.D. Tex. Loc. R. CV-5(d) . . . . . 8

*Other Authorities*

*Neural AI, LLC v. Amazon.com, Inc.*,
No. 26-241, Docket No. 1-3 (W.D. Tex. June 24, 2026) . . . . . 2

*Neural AI, LLC v. CoreWeave, Inc.*,
No. 26-323 Docket No. 1-3 (W.D. Tex. Aug. 18, 2026) . . . . . 2

*Neural AI, LLC v. Google, LLC*,
No. 26-324, Docket No, 1-6 (W.D. Tex. Aug. 18, 2026) . . . . . 3

*Neural AI, LLC v. Meta Platforms*,
No. 26-327 Docket No. 1-6 (W.D. Tex. Aug. 18, 2026) . . . . . 3

*Neural AI, LLC v. Microsoft Corp.*,
No. 26-242, Docket No. 1-3 (W.D. Tex. June 24, 2026) . . . . . 2

*Neural AI, LLC v. Oracle Corp.*,
No. 26-325, Docket No. 1-6 (W.D. Tex. Aug. 18, 2026) . . . . . 3

*Neural AI, LLC v. Tesla Inc.*,
No. 26-318, Docket No. 1-6 (W.D. Tex. Aug. 17, 2026) . . . . . 3

**TABLE OF AUTHORITIES**
*(continued)*


*Other Authorities* *Page*

*Neural AI, LLC v. x.AI Corp.*,
No. 26-319, Docket No. 1-6 (W.D. Tex. Aug. 17, 2026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# INTRODUCTION

Third-party subpoenas usually follow a reasonably familiar dance. The subpoena asks for the sun, the moon, and the stars; the respondent objects, the parties meet and confer, and the subpoenaing party narrows its demand to what it really wants, perhaps a few asteroids. Sometimes the parties reach a deal, and sometimes they don't; if they don't, the subpoenaing party moves to compel a much narrower set of documents—the asteroids rather than the sun-moon-stars sought by the original subpoena.

That familiar story didn't play out here. Things started off as usual: petitioner Neural AI, LLC subpoenaed respondent OAI International, Inc., asking for the sun, the moon, and the stars—in this case, documents and testimony concerning (in Neural's own words) "what NVIDIA GPUs and software OAI uses, how OAI uses them together, whether OAI modifies or customizes the NVIDIA software, and how OAI's workloads and data are processed using those products." Docket No. 1-25 at 3. OAI International objected, and the parties met and conferred—but Neural did not narrow its requests. Instead, Neural proposed that OAI International execute a declaration it provided, or produce documents responsive to the scope of information sought by the same declaration—but the scope of that declaration was *broader*, including information even beyond the sun-moon-stars sought by the subpoenas. Neural repeatedly threatened to file a motion to compel, claiming that it would shortly run out of time to do so, but neglected to mention that it had inexplicably waited more than eight months to serve its first subpoenas. OAI International could not agree either to Neural's sun-moon-stars subpoenas or its sun-moon-stars-*plus* declaration, and so Neural made good on its threats and brought this motion, which asks the Court to order OAI International's production of the full sun-moon-stars within an impossible three weeks.

Neural's motion confirms why the Court can and should deny it, for several independent reasons. First, Neural failed to follow this Court's local rules, most notably Rule 37-2, which requires a moving party to explain and justify each request it seeks to enforce. Instead Neural threw spaghetti at the wall, listing broad categories and providing vague justifications. This Court requires more from movants to compel, and for good reason. Second, Neural failed to meet its burden to show the relevance and proportionality of its requests. Instead, Neural admitted that it has no idea whether OAI International's documents will be relevant at all, confirming that its requests are the definition of a fishing expedition. Third, Neural inexplicably waited eight months to serve its subpoenas on OAI International, despite

seeking the same information from other customers much earlier, thus leaving OAI International insufficient time to respond. And, fourth, Neural's sun-moon-stars requests, which it seeks to enforce verbatim from its subpoena, are wildly overbroad and unduly burdensome, requiring significant work even to understand what documents are in play, let alone to collect them. Each of these failures would, on its own, be fatal to Neural's motion. The Court should deny Neural's motion to compel.

## BACKGROUND

### A. Neural's Litigation and Its Initial Subpoenas to Amazon, Microsoft, and CoreWeave

On September 13, 2024, Neural AI, LLC ("Neural") filed the underlying litigation against a single defendant, NVIDIA Corporation. *Neural AI, LLC v. NVIDIA Corp.*, No. 24-221 (W.D. Tex. Sept. 13, 2024). Although Neural's theory of infringement remains unclear to OAI International, it apparently relies on allegations of "integrated combinations of NVIDIA hardware and software that together implement GPU-accelerated computing" that Neural claims infringe its patents. Mot. at 3:4-9. Neural alleges that "NVIDIA encourages its customers to combine, configure, and use those products in an infringing manner." *Id.* at 3:8-9. But, as Neural admitted in its motion, "NVIDIA has stated throughout discovery—and represented to the Court during a sealed discovery conference on September 8, 2025—that NAI would need to seek from customers and end users any discovery showing how NVIDIA hardware and software are actually deployed." *Id.* at 3:13-15. Shortly after NVIDIA made these statements, on October 15, 2025, Neural served Amazon.com, Inc., Microsoft Corp., and CoreWeave, Inc. identical subpoenas seeking documents about their use of NVIDIA hardware and software. *Neural AI, LLC v. Amazon.com, Inc.*, No. 26-241, Docket No. 1-3 (W.D. Tex. June 24, 2026); *Neural AI, LLC v. Microsoft Corp.*, No. 26-242, Docket No. 1-3 (W.D. Tex. June 24, 2026); *Neural AI, LLC v. CoreWeave, Inc.*, No. 26-323, Docket No. 1-6 (W.D. Tex. Aug. 18, 2026).

### B. Neural's Unexplained and Inexplicable Eight-Month Delay in Serving Subpoenas

Although it subpoenaed Amazon, Microsoft and CoreWeave in October 2025, Neural served no subpoenas on other customers for eight months. Neural now claims in its motion that "OpenAI is one of NVIDIA's most significant and strategic partners, customers, and end users," information it does not and cannot pretend to have only recently learned. Mot. at 8:6. There was thus no reason for Neural not to subpoena OAI International in 2025. But Neural didn't subpoena OAI International, or anyone else

beyond Amazon, Microsoft and CoreWeave. Although OAI International only has the public record of Neural's subpoenas, that public record shows no action by Neural from October 2025 to June 2026. OAI International repeatedly asked Neural to explain this long delay, *see, e.g.*, Docket Nos. 1-22, 1-24, but Neural repeatedly declined to do so. *See, e.g.*, Docket Nos. 1-23, 1-25.

**C. Neural's Eleventh-Hour Subpoena Campaign**

In late June 2026, Neural woke from its subpoena slumber. On June 24 and 25, Neural served identical subpoenas on OAI International, Oracle Corp., Tesla Inc., Google, LLC, Meta Platforms, and x.AI Corp. Docket No. 1-7; *Neural AI, LLC v. Oracle Corp.*, No. 26-325, Docket No. 1-6 (W.D. Tex. Aug. 18, 2026); *Neural AI, LLC v. Tesla Inc.*, No. 26-318, Docket No. 1-6 (W.D. Tex. Aug. 17, 2026); *Neural AI, LLC v. Google, LLC*, No. 26-324, Docket No. 1-6 (W.D. Tex. Aug. 18, 2026); *Neural AI, LLC v. Meta Platforms*, *Inc.,* No. 26-322, Docket No. 1-6 (W.D. Tex. Aug. 18, 2026); *Neural AI, LLC v. x.AI Corp.*, No. 26-319, Docket No. 1-6 (W.D. Tex. Aug. 17, 2026). Although they used some different wording, Neural's June 2026 subpoenas addressed the same subject matter as Neural's October 2025 subpoenas: hardware and software interacting with NVIDIA chips. *Compare supra with supra* § B.

**D. OAI International's Objections to Neural's Initial Set of Subpoenas**

On July 16, 2026, OAI International served timely objections and responses to Neural's document and deposition subpoenas. *E.g.*, Docket No. 1-11. On July 22, 2026, the parties met and conferred regarding these subpoenas. Although the parties discussed other aspects of the subpoenas during this meet-and-confer call, OAI International emphasized that the subpoenas' place of compliance in Austin, Texas was improper, that the subpoenas were invalid for this reason and that OAI International could not compromise on that point, but that OAI International would not object on these grounds to subpoenas with a place of compliance in San Francisco. *See* Docket No. 1-22 at 2.[1]

//

//

[1] Neural claims that OAI International "declined to engage substantively regarding the requests and topics" (Mot. at 5:2-4), but that is not so. *See, e.g.*, Docket No. 1-22 at 2. Neural also calls its incorrect place of compliance an "alleged enforceability issue," but its service of new subpoenas with a San Francisco place of compliance, and its bringing this motion before this Court, confirms Neural's agreement that its first subpoenas lacked a valid place of compliance. *See, e.g.*, *Russell v. Maman*, No. 18-6691, 2021 WL 3212646 (N.D. Cal. July 29, 2021) (place of compliance controls jurisdiction).

**E. Neural's Second Set of Subpoenas and Its Failure to Narrow or Meaningfully Confer**

On July 24, 2026, Neural served new subpoenas on OAI International, seeking the same documents and testimony but now providing a place of compliance in San Francisco. Docket No. 1-6 at 2, 15; *compare* Docket No. 1-7 *with* Docket No. 1-6. Even before OAI International's deadline for its responses and objections, Neural claimed that it had no time to meet and confer or to narrow its requests. On August 5, Neural wrote OAI International that, "[b]ecause document discovery in the underlying action closes on August 11, Neural AI must be prepared to move to compel on Monday, August 10, to preserve its rights," and would do so "unless OpenAI's forthcoming responses reflect materially different positions from those previously asserted or otherwise provide a concrete basis to believe the parties can promptly resolve the outstanding issues." Docket No. 1-13 at 2. Neural declined to narrow its requests at all, but instead offered a series of questions and "a draft declaration" that OAI International could execute in lieu of the subpoena—but which sought information not called for by the subpoenas, thus representing a broadening rather than a narrowing. Docket Nos. 1-14, 1-15; *see* Docket No. 1-24.

On August 7, OAI International served timely objections and responses to the July 24 subpoenas. Docket No. 1-10. OAI International also explained that Neural's questions and draft declaration were not helpful to the meet-and-confer process, because they bore "little relation to the contents of the subpoenas, and serve only to confirm that Neural AI is on a fishing expedition." Docket No. 1-22 at 3. OAI International further explained that, although Neural's questions and draft declaration were not helpful, if Neural "is seeking discovery rather than a fight, it will provide OAI International with a focused list of the information Neural AI believes is truly required for the prosecution of this action, along with a clear explanation of why it needs this information for the litigation." *Id.* at 3.[2]

Neural and OAI International exchanged further emails and letters, but did not change their respective views. Neural insisted that OAI International agree to respond to the full sun-moon-stars scope of the subpoenas or execute Neural's draft declaration to Neural's pre-approved satisfaction (*see* Docket Nos. 1-23, 1-25), while OAI International explained that it could not do either of those, and

//

[2] Neural claims that it "explained the technology and relevance of customer deployment evidence, and identified the implicated OpenAI products and systems." Mot. at 2:7-8. Not so: OAI International repeatedly asked for this information (*e.g.*, Docket Nos. 1-22, 1-24), but never received it.

again encouraged Neural to provide "a focused list of the information Neural AI believes is truly required for the prosecution of this action." Docket No. 1-24 at 2. Neural never did.

**F. Neural's Final Offer Seeks Information Not Called For By Its Subpoenas**

Instead, on August 14, Neural made its "best and final offer before a motion to compel," for OAI International "to produce documents sufficient to show the information sought in [Neural's] previously circulated draft declaration." Docket Nos. 1-26; 1-27. But as OAI International explained in response, "the information sought by the draft declaration is not a narrowed version of the requests in [Neural's] subpoenas. To the contrary, it is a broadening, as the draft declaration seeks information not sought by [Neural's] subpoenas." Docket No. 1-28 at 2. OAI International thus could not accept this offer. *See id.*

**G. Neural's Motions to Compel**

Neural filed this motion seeking to compel OAI International to produce "documents responsive to Requests 1-12" and "a knowledgeable witness on Deposition Topics 1-5"—that is, the full sun-moon-stars sought by Neural's two subpoenas, with no narrowing. Mot. at 2:19-21. Including this motion, Neural AI has filed nine motions to compel against subpoena respondents, the eight others in the Western District of Texas, against Amazon (*Neural AI, LLC v. Amazon.com, Inc.*, No. 26-241 (W.D. Tex.)); Microsoft (*Neural AI, LLC v. Microsoft Corp.*, No. 26-242 (W.D. Tex.)); Tesla (*Neural AI, LLC v. Tesla Inc.*, No. 26-318 (W.D. Tex.)); X.AI (*Neural AI, LLC v. x.AI Corp.*, No. 26-319 (W.D. Tex.)); Meta (*Neural AI, LLC v. Meta Platforms*, No. 26-322 (W.D. Tex.)); CoreWeave (*Neural AI, LLC v. CoreWeave, Inc.*, No. 26-323 (W.D. Tex.)); Google (*Neural AI, LLC v. Google, LLC*, No. 26-324 (W.D. Tex.)); and Oracle (*Neural AI, LLC v. Oracle Corp.*, No. 26-325 (W.D. Tex.)). All remain pending.

**ARGUMENT**

**I. Neural Failed to Comply With This Court's Local Rules**

Neural's out-of-state counsel—none of its seven attorneys list a California address—do not attempt to comply with the Local Rules of this Court, and do not appear to have read them. Neural's repeated failure to respect the rules of this Court is sufficient reason to deny its motion.

**A. Neural's Motion Failed to Comply With Local Civil Rule 37-2**

Neural's motion fails to comply with this Court's Local Civil Rule 37-2. Rule 37-2, entitled "Form of Motions to Compel," requires that:

> In addition to complying with applicable provisions of Civil L.R. 7, a motion to compel further responses to discovery requests must set forth each request in full, followed immediately by the objections and/or responses thereto. For each such request, the moving papers must detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.

Loc. Civ. R. 37-2. Neural does not set forth its twelve document requests and five deposition topics "in full," instead lumping them together into categories (Mot. at 9:1-16, 10:4-14), and fails to provide OAI International's "objections and/or responses" to them. Neural's failure to follow this Court's rules allows Neural to present its requests as more reasonable than they actually are: although the categories Neural sets forth in the motion are themselves overbroad and unreasonable, the actual contents of its requests are much more so. *Compare* Mot. at 9:1-16 *with* Docket No. 1-6 at 13-15; Mot. at 10:4-14 *with* Docket No. 1-6 at 24. It does not matter that Neural attached the subpoenas and OAI International's responses (Docket Nos. 1-6, 1-10), because even "attaching the entirety of [OAI International's] responses as exhibits, without more, is insufficient to comply with the local rule." *Muhammad v. Koening*, No. 24-7884, 2026 WL 2296681, at *7 (N.D. Cal. Aug. 10, 2026). Neural "fails to explain how each of [OAI International's] discovery responses for which [it] seeks to compel further responses are specifically and individually insufficient," instead grouping "them together by their alleged deficiencies using broad and general terms." *Id.* "That's not good enough for a motion to compel," because a "motion to compel is supposed to discuss the discovery requests at issue and explain why they seek relevant and proportional discovery." *Yotta Techs. Inc. v. Evolve Bank & Tr.*, No. 24-6456, 2025 WL 3496685, at *1 (N.D. Cal. Dec. 5, 2025). Neural "can't just gesture in the general direction of a big pile of discovery requests and announce they're all relevant" but has "to discuss them." *Id.* "Any motion to compel must comply with Local Rule 37-2's format requirements, so that the Court can easily ascertain [the responding party's] specific objections to specific responses, what additional documents are sought, and the justification for obtaining such documents." *Sanchez-Martinez v. Freitas*, No. 22-7144, 2024 WL 4933339, at *3-4 (N.D. Cal. Dec. 2, 2024). "Failure to comply with these basic requirements is basis alone for denying the motion[] to compel." *Muhammad,* 2026 WL 2296681, at *7.

//

//

**B. Neural Failed to Comply With Local Civil Rule 11-3**

"An attorney who is not a member of the bar of this Court may apply to appear *pro hac vice* in a particular action in this district," but must "submit the application and admission fee at the time of the filing of a complaint or the attorney's first appearance in the case." Loc. Civ. R. 11-3(a), (b). Neural failed to follow this rule. Of the seven attorneys appearing for Neural in this action, only one lists a California bar number; none of the remaining six have applied for admission *pro hac vice*. *See* Mot. at 13. This Court's rules prohibit this behavior for a very good reason: if out-of-state attorneys can appear before this Court without seeking admission *pro hac vice*, they can avoid having future applications "denied on the grounds that they are regularly engaged in the practice of law in California." *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-3089, 2025 WL 917110, at *17 (N.D. Cal. Mar. 26, 2025), *motion for relief from judgment denied*, 2026 WL 793025 (N.D. Cal. Mar. 20, 2026). Unless all of Neural's attorneys appearing in this action promptly seek admission *pro hac vice*, the Court can and should deny its motion for failure to follow this rule as well.

**C. Neural Failed to Comply With Local Civil Rule 5-5**

Except for papers served through ECF, this Court requires a "[c]ertificate of service stating the date, place, and manner of service, and the name, street address, or electronic address of each person served, certified by the person who made service, pursuant to 28 U.S.C. §1746." Loc. Civ. R. 5-5(b). Neural repeatedly failed to comply with this rule. In its case-initiating filings Neural claimed, without verification or specifics, that its motion "was served on counsel for OAI International, Inc." on August 17. Mot. at 14. This was incorrect. Two days later, after the Court ordered Neural to file a certificate of service, Docket No. 3, Neural served OAI International by hand and filed the process server's certificate of service, which met the requirements of Loc. Civ. R. 5-5(b). Docket No. 4. Neural then filed another certificate of service, which again failed to meet the requirements of Loc. Civ. R. 5-5(b), and which repeated the incorrect claim that, "[o]n August 17, 2026, Petitioner served counsel for OAI International, Inc. by electronic mail with the miscellaneous action, including Petitioner's Motion to Compel, supporting declaration and exhibits, and proposed order." Docket No. 5. This claim was incorrect for two reasons. First, service of case-initiating documents falls under Fed. R. Civ. P. 4, not Rule 5, as Neural acknowledged by eventually hiring a process server to serve under Rule 5. *Supra*. And second,

even Rule 5 allows only service by "electronic means that the person consented to in writing"—consent which Neural has not requested. Fed. R. Civ. P. 5(b)(2)(E); *see, e.g.*, *AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.*, No. 19-4789, 2019 WL 3859012, at *2 (N.D. Cal. Aug. 16, 2019). Some Courts have local rules allowing electronic service. *E.g.*, E.D. Tex. Loc. R. CV-5(d). This Court does not. *See supra.*

**II. Neural Served Its Subpoenas Too Late For OAI International to Comply With Them**

A "subpoena should be served in advance of its return date so that the person subject to the subpoena has a reasonable time to comply." *Gjovik v. Apple Inc.*, No. 23-4597, 2026 WL 1025553, at *2 (N.D. Cal. Apr. 15, 2026) (quoting 9 Moore's Federal Practice Civil § 45.21 (2026)). Neural failed to do so, further requiring denial of its motion. Neural admits that a "central issue in the Underlying Action is how and when NVIDIA's accused hardware and software operate in customers' real-world systems," and further admits that "NVIDIA has stated throughout discovery—and represented to the Court during a sealed discovery conference on September 8, 2025—that NAI would need to seek from customers and end users any discovery showing how NVIDIA hardware and software are actually deployed." Mot. at 1:10-11, 3:13-15; *supra* § A. NVIDIA's September 8 disclosure was enough for Neural to subpoena third-parties Amazon, Microsoft and CoreWeave in October 2025 (*supra* § A), and Neural could have subpoenaed OAI International then too—but, for reasons Neural has never explained, it chose not to subpoena OAI International for eight more months, until late June 2026. *Supra* § B. As a result of Neural's unexplained delay, as well as Neural's initial failure to provide a valid place of compliance and thus a valid subpoena, Fed. R. Civ. P. 45(c)(2), by the time Neural served valid subpoenas, OAI International had only three weeks and a weekend—from service on Friday, July 24 to filing of this motion on Monday, August 17—to parse Neural's complicated requests, collect documents, and prepare testimony. This was not a "reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i).

Not lacking for chutzpah, Neural cast its delay as advantage, declining to narrow and threatening to move to compel because, it said, deadlines forced its hand. *E.g.*, Docket No. 1-13 at 2; 1-23 at 2; *supra* § E. But Neural cannot engineer its own emergency by delaying discovery; to the contrary, "when parties delay discovery for any reason, they do so at their peril." *Wyles v. Sussman*, 445 F. Supp. 3d 751, 756 (C.D. Cal. 2020). Implementing this principle, "Rule 45 provides that a Court must quash or modify a subpoena" which "fails to allow a reasonable time to comply." *AngioScore, Inc. v. TriReme*

*Med., Inc.*, No. 12-3393, 2014 WL 6706898, at *1 (N.D. Cal. Nov. 25, 2014) (citing Fed. R. Civ. P. 45(d)(3)). Neural's subpoenas were "patently unreasonable" given "the complexity of the production sought" and "fails to allow a reasonable time for compliance." *BNSF Ry. Co. v. Ctr. for Asbestos Related Disease, Inc.*, No. 19-40, 2022 WL 1442854, at *4 (D. Mont. May 6, 2022). "Giving plaintiffs every benefit of the doubt in regard to the earliest service date of the subpoenas, and in light of the complexity of the subpoenas which require a great deal of document investigation by attorney-witness deponents, they have provided an insufficient showing for initiating this discovery at the eleventh hour, only six weeks before discovery cutoff in a case that is" two years old. *Mori v. Baroni*, No. 07-295, 2008 WL 2509143, at *3 (E.D. Cal. June 23, 2008). Neural's "lack of prior planning is not this court's emergency." *Id.* For this reason too, the Court can and should deny Neural's motion to compel.

## III. Neural Failed to Show Relevance or Proportionality

### A. Neural's Subpoenas Are a Fishing Expedition

A "party may subpoena only information that is relevant to the claims and defenses in the action, and is proportional to the needs of the case." *Moussouris v. Microsoft Corp.*, No. 16-80170, 2016 WL 5870010, at *4 (N.D. Cal. Oct. 7, 2016) (citing Fed. R. Civ. P. 26(b)(1)); *see Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015)). The "requested discovery must be relevant to the subject matter involved in a pending action and must not be based on the requesting party's mere suspicion or speculation." *Belling v. DDP Holdings, Inc.*, No. 12-1855, 2013 WL 12140986, at *3 (C.D. Cal. May 30, 2013) (citing *Sirota v. Penske Truck Leasing Corp.*, No. 05-3296, 2006 WL 708910, at *1 (N.D. Cal. Mar. 17, 2006)). But Neural's own motion admits that its subpoenas depend on "mere suspicion or speculation." *Belling*, 2013 WL 12140986, at *3. According to Neural itself, Neural does not know "*whether* OpenAI's systems perform the asserted method steps" it accuses of infringement (Mot. at 9:16-18 (emphasis added)), and seeks "OpenAI's documents and testimony [to] show *whether* and how often the accused methods are actually performed by OpenAI." *Id.* at 8:13-15 (emphasis added). Neural hopes the Court will look past those telltale "whethers," but it should not: the telltale "whethers" dispose of Neural's motion by confirming that Neural has no idea whether OAI International does anything allegedly infringing or not. *See id.*

//

It is actually worse than that: Neural not only has no idea whether OAI International does anything allegedly infringing, but also has no particular reason to think that it does. During the parties' meet-and-confer discussions, OAI International repeatedly asked Neural to provide any reasons it had to believe that OAI International did anything that Neural claimed infringed, and Neural repeatedly declined to do so. *See, e.g.*, Docket Nos. 1-24 at 2, 1-28 at 2. Neural's silence continued through its motion, which mentions that OpenAI is a well-known NVIDIA customer, *e.g.*, Mot. at 3, 8, but carefully stops short of claiming any basis for believing that OAI International uses NVIDIA chips in an allegedly infringing manner. *See generally id.* Neural thus admits that it has no reason to believe that *any* OAI International documents or testimony have *any* relevance to any claims and defenses in the underlying action—but nevertheless asks the Court to order OAI International to produce them all anyway. In other words, Neural admits that it is on a fishing expedition. "Courts need not allow 'fishing expeditions.'" *Bluestone Innovations LLC v. LG Elecs. Inc*, No. 13-1770, 2013 WL 6354419, at *2 (N.D. Cal. Dec. 5, 2013) (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004)). The "liberal discovery standard is not so liberal as to allow a party [to] explore matter which 'does not presently appear germane on the theory that it might conceivably become so.'" *Bluestone*, 2013 WL 6354419, at *2 (quoting *Food Lion v. United Food & Commr. Workers Int'l Union*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997)). That is precisely what Neural asks the Court to order here.

**B. Neural's Subpoenas Are Not Proportionate to the Needs of the Underlying Case**

In "order to succeed on a motion to compel, a moving party bears the burden of not only demonstrating relevance, but also demonstrating that it has satisfied proportionality and other requirements of Rule 26." *Shared P'ship v. Meta Platforms, Inc.*, No. 22-2366, 2023 WL 2526645, at *3 (N.D. Cal. Mar. 14, 2023). "[C]ourts are required to limit discovery if its burden or expense outweighs its likely benefit; this is 'the essence of proportionality,' a frequently ignored or overlooked discovery principle." *Richards v. Centripetal Networks, Inc.*, No. 23-145, 2024 WL 4375785, at *1 (N.D. Cal. Oct. 2, 2024) (quoting *Om Recs., LLC v. OM Dev., SAS*, No. 23-4506, 2024 WL 4100870, at *3 (N.D. Cal. Sept. 6, 2024)). Neural fails this test as well.

Neural cannot show a "likely benefit" of the discovery it seeks, as it admits that it has no reason to believe that OAI International uses NVIDIA chips in an allegedly infringing manner. *Richards*, 2024

WL 4375785, at *1; *see supra* § III.A. But even if Neural could show a "likely benefit" from discovery, any such benefit would be far outweighed by the "burden or expense" of Neural's proposed discovery. *Richards*, 2024 WL 4375785, at *1. To see that burden, the Court need not look beyond Neural's own meet-and-confer correspondence, which describes its subpoenas as seeking "what NVIDIA GPUs and software OAI uses, how OAI uses them together, whether OAI modifies or customizes the NVIDIA software, and how OAI's workloads and data are processed using those products." Docket No. 1-25 at 3. This scope could call for nearly every document in the possession of a company operating AI models. "The subpoenas as drafted are overbroad, sweeping in vast amounts of irrelevant information, and as such are not proportional to the needs of the case." *Russo v. Fed. Med. Servs., Inc.*, No. 24-748, 2024 WL 4633641, at *2 (N.D. Cal. Oct. 29, 2024). The Court can deny Neural's motion for this reason too.

**IV. Neural's Subpoenas are Unduly Burdensome**

Neural's subpoenas are also unduly burdensome. The "court must quash or modify a subpoena that imposes an undue burden." *Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, No. 15-80123, 2015 WL 2229229, at *2 (N.D. Cal. May 12, 2015) (citing Fed. R. Civ. P. 45(c)(3)). "'[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party,' and requires the court's consideration of 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Huynh v. Wal-Mart Assocs., Inc.*, No. 18-1631, 2019 WL 13221170, at *1 (N.D. Cal. Aug. 1, 2019) (alteration in original) (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)).[3]

**A. Document Request No. 1**

Request No. 1 seeks "Documents sufficient to identify all software, frameworks, libraries, APIs, scripts, Source Code, configuration files, and custom code You use to perform computations on NVIDIA

[3] Neural cites *611 Carpenter LLC v. Atlantic Casualty Insurance Co.*, No. 23-823, 2024 WL 1977160, at *1 (W.D. Tex. Apr. 30, 2024), for the proposition that OAI International somehow waived any burden arguments in its responses and objections. Even assuming that *611 Carpenter* applies in this Court, it says nothing of the sort. There, the Court found that the "third-party entities have not borne their burden of substantiating their objections" because the "recipients of the third-party subpoenas have not objected to the scope of the subpoenas" at all, even by the time of the motion. *Id.* at *2. *611 Carpenter* cannot remotely support Neural's claim that OAI International's timely responses and objections somehow waived its burden arguments. *See* Mot. at 11:7-9.

GPUs." Docket No. 1-6 at 12. Neural defines "NVIDIA GPUs" with a wall of text including more than 240 individually named devices. *Id.* at 5-7. And although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Request No. 1 thus seeks to require OAI International to parse eight different kinds of documents, cross-reference them with more than 240 kinds of devices over eight years, and produce each one—whether or not they relate to any alleged infringement. The "documents required to be searched, collected, and reviewed are unduly burdensome," and it "would take significant time and resources" even to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**B. Document Request No. 2**

Request No. 2 seeks "Documents sufficient to show whether You use NVIDIA's Aerial, Clara Parabricks, cuBLAS, cuDNN, cuFFT, cuQuantum, cuSOLVER, cuSPARSE, Drive, DriveWorks, Holoscan, Isaac, Isaac Lab, Maxine, Memory Map, Merlin, Metropolis, Modulus, Monai, Morpheus, NeMo, PyTorch, RAPIDS, Riva, Runtime Driver, TensorFlow, TensorRT, Triton, VSS (Deepstream), or any other NVIDIA software as part of computations You perform using NVIDIA GPUs." Docket No. 1-6 at 12. Again, the definition of "NVIDIA GPUs" includes more than 240 individually named devices (*id.* at 5-7); Neural does not define the remaining 29 products by version, date or anything else, requiring OAI International to parse those products and match them against the 240 NVIDIA GPUs. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" even to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**C. Document Request No. 3**

Request No. 3 seeks "Documents sufficient to show whether You use sample Source Code provided by NVIDIA as part of computations You perform using NVIDIA GPUs." Docket No. 1-6 at 12. Again, the definition of "NVIDIA GPUs" includes more than 240 individually named devices. *Id.* at 5-7. Neural's definition of "Source Code" is similarly broad (*id.* at 8-9), but it provides no definition for "sample." Again, although the request is phrased in the present tense, it calls for documents covering

the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" even to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**D. Document Request No. 4**

Request No. 4 seeks "Documents sufficient to show whether and how any software You use to perform computations on NVIDIA GPUs calls, invokes, interfaces with, wraps, depends on, sits on top of, modifies, extends, or implements functionality provided by CUDA, cuDNN, TensorRT, CUDA libraries, CUDA drivers, CUDA runtime, CUDA applications or frameworks or any other NVIDIA software." Docket No. 1-6 at 12. Again, the definition of "NVIDIA GPUs" includes more than 240 individually named devices. *Id.* at 5-7. Neural does not define the remaining eight products by version, date or anything else, requiring OAI International to parse those products and match them against the 240 NVIDIA GPUs. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**E. Document Request No. 5**

Request No. 5 seeks "Documents sufficient to show the architecture, design, data flow, control flow, and execution flow of any system in which You use NVIDIA GPUs to perform computations, including diagrams, technical specifications, design documents, Powerpoints, slide decks, internal and external presentations, Source Code, configuration files, build files, deployment files, runtime logs, and profiler traces." Docket No. 1-6 at 12. Again, the definition of "NVIDIA GPUs" includes more than 240 devices. *Id.* at 5-7. The phrase "any system in which You use NVIDIA GPUs to perform computations" is breathtakingly broad, and could include even employees' personal computers with hardware graphics acceleration. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

//

**F. Document Request No. 6**

Request No. 6 seeks "Documents sufficient to show whether computations You performed using NVIDIA GPUs involved artificial neural networks, neural-network computational layers or computations with outputs as inputs for other neurons or layers." Docket No. 1-6 at 13. Again, the definition of "NVIDIA GPUs" includes more than 240 devices. *Id.* at 5-7. Again, the phrase "computations You performed using NVIDIA GPUs" is breathtakingly broad, and there is no definition to help parse "artificial neural networks, neural-network computational layers or computations with outputs as inputs for other neurons or layers." Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**G. Document Request No. 7**

Request No. 7 seeks "Documents sufficient to show whether You use a pointer to data stored in memory (e.g. memory bank or partition), using as an input to a subsequent computational layer the pointer to output data from a GPU computation, using pointers in neural network computations, swapping an input pointer with the pointer to data output from a GPU computation, pointer swapping, pointer rotation, buffer swapping, ping-pong buffers, double or triple buffering, alternating input/output buffers, or any other technique in which output data from one computation, layer, iteration, time step, or cycle becomes input data for a later computation, layer, iteration, time step, or cycle." Docket No. 1-6 at 13. Again, this request is breathtakingly broad, as myriad programming languages and implementations use "pointer[s] to data stored in memory" as well as the other items on Neural's list in this request. *See, e.g.*, https://en.wikipedia.org/wiki/Pointer_(computer_programming). Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

//

//

**H. Document Request No. 8**

Request No. 8 seeks "Documents sufficient to show whether You store input data, output data, intermediate results, tensors, activations, weights, parameters, internal variables, GPU programs, kernels, textures, shaders, or other GPU-computation-related data in separate, partitioned, logical, physical, first/second, input/output, texture, shader, shared, global, device, host, pinned, GPU RAM, GPU cache(s), or unified memory regions (shared by CPU and GPU) when performing computations using NVIDIA GPUs." Docket No. 1-6 at 13. Again, the definition of "NVIDIA GPUs" includes more than 240 individually named devices. *Id.* at 5-7. Again, this list of interlocking topics is breathtakingly broad, as myriad languages and implementations "store" (for example) "input data" in "separate . . . memory regions." *See, e.g.*, https://en.wikipedia.org/wiki/Memory_safety. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." Docket No. 1-6 at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**I. Document Request No. 9**

Request No. 9 seeks "Documents sufficient to show how input data is received, acquired, stored, transferred, copied, streamed, prefetched, staged, queued, or loaded from CPU memory, host memory, system memory, storage, sensors, cameras, or other input sources to NVIDIA GPU memory—including GPU RAM (e.g. GPU HBM, GDDR) and/or GPU cache(s)—before, during, or in parallel with computations You perform using NVIDIA GPUs." Docket No. 1-6 at 13. Again, the definition of "NVIDIA GPUs" includes more than 240 individually named devices. *Id.* at 5-7. Again, this list of interlocking topics is breathtakingly broad, and includes literally every single time, and every single way, that data has passed from a CPU to a GPU or vice versa. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id*. at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

//

**J. Document Request No. 10**

Request No. 10 seeks "Documents sufficient to show how output data from a GPU computation(s), intermediate results of GPU computations, tensors, buffers, activations, variables, or other computation results are stored, transferred, copied, streamed, written back, returned, accumulated, reused, or made available including asynchronously from NVIDIA GPU memory to CPU memory, host memory, system memory, storage, display, network, or another memory location before, during, or in parallel with computations You perform using NVIDIA GPUs—and also including in the opposite direction, copying data from CPU or host or other memory to a queue for GPU computation while other GPU computations are occurring." Docket No. 1-6 at 14. Again, the definition of "NVIDIA GPUs" includes more than 240 devices. *Id.* at 5-7. Again, this list of interlocking topics is breathtakingly broad, and includes literally every single time, and every single way, that data has passed from a CPU to a GPU or vice versa. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**K. Document Request No. 11**

Request No. 11 seeks "Documents sufficient to show how computations You perform using NVIDIA GPUs are scheduled, ordered, controlled, queued, synchronized, parallelized, launched, interrupted, resumed, or executed, including through kernels, CUDA streams, CUDA graphs, events, threads, controllers, schedulers, compilers, runtimes, inference engines, run lists, run engines, or custom software." Docket No. 1-6 at 14. Again, the definition of "NVIDIA GPUs" includes more than 240 individually named devices. *Id.* at 5-7. Neural does not define the remaining 13 products by version, date or anything else, requiring OAI International to parse those products and match them against the 240 NVIDIA GPUs. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

//

**L. Document Request No. 12**

Request No. 12 seeks "Documents sufficient to show whether and how user inputs, user commands, configuration changes, parameter changes, model changes, computational-element changes, input changes, interruptions, or display/output changes affect computations You perform using NVIDIA GPUs and/or queue them for GPU computation." Docket No. 1-6 at 14. Again, the definition of "NVIDIA GPUs" includes more than 240 individually named devices. *Id.* at 5-7. Again, this list of interlocking topics is breathtakingly broad, and includes literally every single time, and every single way, that anything including "user inputs" could "affect computations"—which includes *everything*. Again, although the request is phrased in the present tense, it calls for documents covering the period from "September 13, 2018 to the present." *Id.* at 11. Again, it "would take significant time and resources" to understand what documents Neural seeks in this request, let alone "to locate and compile" any responsive documents. *Monterey Bay*, 2015 WL 2229229, at *2.

**M. Deposition Topic No. 1**

Deposition Topic No. 1 requests a witness knowledgeable about "The NVIDIA software and libraries You use to perform computations, including but not limited to NVIDIA's Aerial, Clara Parabricks, cuBLAS, cuDNN, cuFFT, cuQuantum, cuSOLVER, cuSPARSE, Drive, DriveWorks, Holoscan, Isaac, Isaac Lab, Maxine, Memory Map, Merlin, Metropolis, Modulus, Monai, Morpheus, NeMo, PyTorch, RAPIDS, Riva, Runtime Driver, TensorFlow, TensorRT, Triton, VSS (Deepstream)." Docket No. 1-6 at 22. Although Neural names (but does not define) 29 products, it also requires the witness to be knowledgeable about all "NVIDIA software and libraries You use to perform computations." Neural did not provide a time limitation for this topic. This topic is "unworkable," as it would "require a witness to memorize reams of detailed information concerning lengthy periods of time" at a level of detail that "makes it unlikely that any human being could be prepared to testify competently to the scope." *Morris v. Wells Fargo & Co.*, No. 23-3277, 2025 WL 3443504, at *3 (N.D. Cal. Dec. 1, 2025).

**N. Deposition Topic No. 2**

Deposition Topic No. 2 requests a witness knowledgeable about "The NVIDIA sample Source Code You use, in whole or in part, to conduct computations." Docket No. 1-6 at 22. Again, "conduct

computations" is breathtakingly broad, and could include even personal employee computers. Again, Neural does not define "sample" but does define "Source Code," very broadly. *Id.* at 21. Again, Neural did not provide a time limitation for this topic. Again, this topic is "unworkable," as it would "require a witness to memorize reams of detailed information concerning lengthy periods of time" at a level of detail that "makes it unlikely that any human being could be prepared to testify competently to the scope." *Morris*, 2025 WL 3443504, at *3.

**O. Deposition Topic No. 3**

Deposition Topic No. 3 requests a witness knowledgeable about "Your customizations and/or data inputs to NVIDIA software that alter the way in which NVIDIA software performs computations and/or a description of the data input to NVIDIA software on which computations are run." Docket No. 1-6 at 22. Again, Neural does not define "customizations" or "software" but calls for "a description of the data input to NVIDIA software on which computations are run," which could include even personal employee computers. Again, Neural did not provide a time limitation for this topic. Again, this topic is "unworkable," as it would "require a witness to memorize reams of detailed information concerning lengthy periods of time" at a level of detail that "makes it unlikely that any human being could be prepared to testify competently to the scope." *Morris*, 2025 WL 3443504, at *3.

**P. Deposition Topic No. 4**

Deposition Topic No. 4 requests a witness knowledgeable about "Identification of Your software that uses NVIDIA GPUs to perform computations." Docket No. 1-6 at 22. Again, this topic is breathtakingly broad, as "software that uses NVIDIA GPUs to perform computations" could include even employee personal computers with hardware graphics acceleration. Again, Neural did not provide a time limitation for this topic. Again, this topic is "unworkable," as it would "require a witness to memorize reams of detailed information concerning lengthy periods of time" at a level of detail that "makes it unlikely that any human being could be prepared to testify competently to the scope." *Morris*, 2025 WL 3443504, at *3.

**Q. Deposition Topic No. 5**

Deposition Topic No. 5 requests testimony on "[u]sing Your software, the ways in which output data from a GPU computation(s), including intermediate results of GPU computations are stored,

referenced by a pointer, transferred, copied, streamed, written back, returned, accumulated, reused, or made available including asynchronously from NVIDIA GPU memory to CPU memory, host memory, system memory, storage, display, network, or another memory location before, during, or in parallel with computations performed using NVIDIA GPUs." Docket No. 1-6 at 22. Again, Neural does not define "software" or any of the functions in this topic, but the definition of "NVIDIA GPUs" includes more than 240 devices. *Id.* at 18-20. Again, this topic is "unworkable," as it would "require a witness to memorize reams of detailed information concerning lengthy periods of time" at a level of detail that "makes it unlikely that any human being could be prepared to testify competently to the scope." *Morris*, 2025 WL 3443504, at *3.

Although each of Neural's requests is individually burdensome, *see supra*, the Court need not rule on them individually, as Neural does not press them individually. Instead, Neural seeks an order compelling OAI International to "produce nonprivileged documents responsive to Requests for Production Nos. 1-12 on a rolling basis to begin within 7 days of the Court's order and to complete production within twenty-one (21) days of the Court's order, and (2) compel OpenAI to designate and produce a knowledgeable witness on Deposition Topics 1-5 within thirty (30) days of the Court's order." Mot. at 12:20-24. Neural does not seek any relief in the alternative, so to deny Neural's motion, the Court need only consider the total burden of all seventeen document and deposition topics. That burden would be more than undue. "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Free Stream Media Corp. v. Alphonso Inc.*, No. 17-2107, 2017 WL 6209309, at *3 (N.D. Cal. Dec. 8, 2017) (quoting *Lemberg Law LLC v. Hussin*, No. 16-80066, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016)). "Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *Free Stream Media*, 2017 WL 6209309, at *3 (quoting *United States v. C.B.S., Inc.*, 666 F.2d 464, 371-72 (9th Cir. 1982)). "The subpoenas impose an undue burden on the subpoenaed parties because the subpoenas force those parties to spend hundreds of hours compiling and reviewing tens of thousands of documents." *Hosseinzadeh v. Bellevue Park Homeowners Assn.*, No. 18-1385, 2020 WL 3271769, at *3 (W.D. Wash. June 17, 2020). The Court should deny Neural's motion.

## CONCLUSION

For the foregoing reasons, OAI International respectfully requests that the Court deny Neural's motion to compel compliance with its subpoenas.

Date: September 2, 2026

Respectfully submitted,

Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
DeMarcus B. T. Williams (State Bar No. 329756)
Madeline A. Woodall (State Bar No. 351664)
WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
24-221@cases.warrenllp.com

*Attorneys for OAI International, Inc.*