Tanner Laiche
CA State Bar No. 344342
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorney for Petitioner Neural AI, LLC*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>OAI INTERNATIONAL, INC.,<br><br>Respondent. | Misc. Case No. 3:26-mc-80261-AGT<br><br>**NEURAL AI'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL COMPLIANCE WITH SUBPOENA SERVED ON THIRD-PARTY OAI INTERNATIONAL, INC.**<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

## TABLE OF CONTENTS

I. NAI'S MOTION COMPLIES WITH THIS COURT'S LOCAL RULES ........................ 2

A. NAI's Motion Substantially Complies with Local Rule 37-2................................ 2

B. Any Pro Hac Vice Issue Has Been Cured and Does Not Justify Denial................ 3

C. NAI Gave Immediate Notice and Properly Effected Personal Service.................. 4

II. NAI'S MOTION IS TIMELY ........................................................................... 5

III. THE SUBPOENAS SEEK RELEVANT, PROPORTIONAL DISCOVERY .................. 7

IV. OPENAI HAS NOT DEMONSTRATED UNDUE BURDEN........................................ 9

A. NAI Repeatedly Offered Less Burdensome Alternatives. .................................. 11

B. OpenAI Provides Zero Evidence of Actual Burden............................................ 13

V. CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.*,
2019 WL 3859012 (N.D. Cal. Aug. 16, 2019) .... 4

*Emcyte Corp. v. Apex Biologix, LLC*,
2021 WL 5507219 (C.D. Cal. Nov. 24, 2021) .... 4

*FG SRC LLC v. Xilinx, Inc.*,
2022 WL 22997130 (D. Del. Apr. 11, 2022) .... 7, 8

*Freeman v. Giuliani*,
2023 WL 4750552 (D.D.C. July 13, 2023) .... 5

*Hall v. Marriot Int'l, Inc.*,
2021 WL 1906464 (S.D. Cal. May 12, 2021) .... 13

*In re Matsumoto*,
2023 WL 6959279 (N.D. Cal. Oct. 19, 2023) .... 10

*Kim v. NuVasive, Inc.*,
2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) .... 9

*L.G. Philips LCD Co. v. Tatung Co.*,
2007 WL 869700 (E.D. Cal. Mar. 21, 2007) .... 8

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
894 F.2d 1318 (Fed. Cir. 1990) .... 7

*Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*,
2011 WL 941197 (D. Del. Mar. 16, 2011) .... 7

*Muhammad v. Koenig*,
2026 WL 2296681 (N.D. Cal. Aug. 10, 2026) .... 2, 3

*Negotiated Data Sols. LLC v. Dell, Inc.*,
2009 WL 733876 (N.D. Cal. Mar. 17, 2009) .... 9

*Pro. Programs Grp. v. Dep't of Com.*,
29 F.3d 1349 (9th Cir. 1994) .... 2

*Sanchez-Martinez v. Freitas*,
2024 WL 4933339 (N.D. Cal. Dec. 2, 2024) .... 3

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017) .... 6, 10

*Universal Dyeing & Printing, Inc. v. Zoetop Bus. Co.*, 2023 WL 9004983 (C.D. Cal. June 23, 2023) .......... 13

*Waller v. Jet Specialty, Inc.*, 2024 WL 7050192 (W.D. Tex. 2024) .......... 13

*Yotta Techs. Inc. v. Evolve Bank & Tr.*, 2025 WL 3496685 (N.D. Cal. Dec. 5, 2025) .......... 3

**Rules**

Fed. R. Civ. P. 4 .......... 4

Fed. R. Civ. P. 5 .......... 4, 5

Fed. R. Civ. P. 45 .......... 4, 5, 6

L.R. 11-3 .......... 4

L.R. 37-2 .......... 2

L.R. 37-3 .......... 6

L.R. CV-16(e) .......... 6, 7

OpenAI's Opposition spends twenty pages trying to avoid a straightforward third-party discovery obligation without producing a single responsive document or offering a single witness.[1] Its threshold objections fare no better than its merits arguments. OpenAI elevates curable procedural issues over substance, insists NAI's motion was untimely even though OpenAI responded to subpoenas—twice—refusing any production well in advance of the document-discovery cutoff, and attacks NAI for seeking customer evidence that NVIDIA itself told NAI it must obtain from customers and end users. OpenAI then labels the subpoenas a "fishing expedition" while acknowledging that it uses accused NVIDIA products and that NAI's infringement theory concerns how NVIDIA hardware and software are actually deployed together.

OpenAI's burden argument rests on the same distortion. Despite devoting pages to supposed burden, OpenAI submits no declaration from anyone who actually knows what compliance would require. It identifies no custodians, repositories, collection volumes, estimated hours, or costs, and describes no collection it ever attempted. Instead, it inflates the subpoena on paper, most notably by repeating that NAI's definition lists more than 240 NVIDIA devices, as though OpenAI must conduct 240 separate investigations. It does not. Every request is limited to NVIDIA products OpenAI actually uses, leaving OpenAI only to identify that subset from its own records and produce documents sufficient to show the requested facts.

The Opposition also invokes "moon and stars" rhetoric but conceals how NAI worked to avoid this motion entirely. NAI offered OpenAI a far narrower path, providing targeted information about its actual use and deployment of NVIDIA products through a declaration or documents sufficient to establish the same facts. OpenAI rejected that proposal and produced nothing. It simply labels NAI's focused proposal "broader" than the subpoenas, without a word of explanation, while

[1] Unless otherwise indicated, this Reply uses the same defined terms as NAI's Motion to Compel.

simultaneously insisting the subpoenas themselves are too broad. Moreover, the Court is not limited to an all-or-nothing choice and may enforce the subpoenas in narrowed form and order the focused relief NAI proposed during the meet-and-confer process.

# I. NAI'S MOTION COMPLIES WITH THIS COURT'S LOCAL RULES

## A. NAI's Motion Substantially Complies with Local Rule 37-2.

OpenAI first argues that NAI did not reproduce verbatim—within the body of its memorandum—all twelve requests, five topics, and OpenAI's identical objections refusing to provide any discovery. Opp. at 5–6. That is, at most, a harmless formatting issue, and is not a basis to avoid the merits of NAI's motion. NAI attached the subpoenas and OpenAI's responses, identified every disputed request and topic by number, organized them into four functional categories, explained how each category relates to the asserted claim limitations, and noted that OpenAI repeated the same boilerplate objections and refusal to respond to every single request and topic. Mot. at 11–14; Ex. 5; Exs. 9–10.

Even if the Court finds NAI did not strictly comply with Local Rule 37-2, that rule does not mandate denial for noncompliance. Courts may overlook departures from local rules where, as here, the moving papers provide the functional equivalent of the required information and no substantial right is affected. *See Pro. Programs Grp. v. Dep't of Com.*, 29 F.3d 1349, 1353 (9th Cir. 1994) ("[T]he district court has broad discretion to depart from the strict terms of the local rules where it makes sense to do so and substantial rights are not at stake."). Indeed, this Court has reached the merits of a discovery dispute despite far more substantial noncompliance with Rule 37-2. For example, in *Muhammad v. Koenig*—a case OpenAI itself quotes—the movant neither reproduced the disputed requests and responses nor explained why each response was deficient. 2026 WL

2296681, at *7 (N.D. Cal. Aug. 10, 2026). The court nevertheless considered the merits. *Id.*[2]

Here, by contrast, OpenAI had the complete requests and objections, understood precisely what NAI sought, and addressed every request individually across eight pages of its opposition. Opp. at 11–19. OpenAI therefore cannot credibly claim uncertainty about what NAI seeks, why it seeks it, or which objections NAI challenges. And OpenAI identifies no prejudice from how NAI presented that information.

If the Court nevertheless prefers a different presentation, the appropriate remedy is to permit NAI to submit a request-by-request statement, and not to forfeit relevant discovery on a fully briefed record.

**B. Any Pro Hac Vice Issue Has Been Cured and Does Not Justify Denial.**

OpenAI next asks the Court to deny NAI's motion because several attorneys listed on NAI's original signature page had not applied for pro hac vice admission. Opp. at 6–7. But those attorneys never filed notices of appearance, are not listed on the docket, and are not counsel of record in this miscellaneous proceeding. They represent NAI in the underlying litigation, which is why their names appeared in the signature block of NAI's motion to compel. NAI has removed them from this filing, which is signed by counsel admitted to practice before this Court.

That argument also provides no basis to deny NAI's motion. OpenAI cites no authority holding that a signature-block defect warrants forfeiture of otherwise proper discovery. And Local

---

[2] OpenAI's remaining cases are readily distinguishable. In each, the moving papers left the court unable to determine what discovery the movant sought or why it was relevant and proportional. *See Yotta Techs. Inc. v. Evolve Bank & Tr.*, 2025 WL 3496685, at *1 (N.D. Cal. Dec. 5, 2025); *Sanchez-Martinez v. Freitas*, 2024 WL 4933339, at *3–4 (N.D. Cal. Dec. 2, 2024). That simply is not this case. NAI attached the subpoenas and OpenAI's objections, grouped the requests by subject matter, identified the specific information sought, explained why each category bears on infringement and inducement, and explained OpenAI outright refused to comply. OpenAI plainly understood both the discovery and NAI's justification for it because it devotes much of its twenty-page Opposition to addressing the requests individually on the merits.

Rule 11-3 says nothing of the sort. There is no prejudice, no confusion about who represents NAI before this Court, and no continuing issue to remedy. OpenAI's effort to convert that housekeeping matter into a basis for denying discovery should be rejected.

**C. NAI Gave Immediate Notice and Properly Effected Personal Service.**

OpenAI's service argument is a distraction. NAI filed its motion at 8:36 pm on August 17 and sent the complete filing to OpenAI's counsel that same night. Dkt. 5-1. The next morning, NAI arranged for personal service, and a professional process server served OpenAI's registered agent on August 19. Dkt. 4; Dkt. 5-2. That same day, NAI filed the executed affidavit identifying the date, time, place, manner of service, and person served, certified under penalty of perjury. *Id.* OpenAI thus had actual notice from the moment the motion was filed and formal personal service two days later.

OpenAI nevertheless accuses NAI of making a false statement because the original Certificate of Service reported that counsel received the filing by email on August 17. Opp. at 7. There was nothing false about that statement. NAI did email OpenAI's counsel the complete filing on August 17. It then separately completed personal service on August 19. OpenAI's cited authority establishes only that email service, absent consent, may not itself satisfy Rule 5. *See AboveGEM, Inc. v. Organo Gold Mgmt., Ltd.*, 2019 WL 3859012, at *2 (N.D. Cal. Aug. 16, 2019). It does not remotely establish that where—as here—personal service is completed, that service is ineffective.

Moreover, OpenAI's position that Rule 4 governed because the filing opened a miscellaneous proceeding is equally misplaced. Rule 4 governs service of a summons and complaint. NAI filed neither. And courts addressing subpoena-enforcement proceedings have instead applied Rule 5 to service of motion papers. *See Emcyte Corp. v. Apex Biologix, LLC*, 2021 WL 5507219, at *2 (C.D. Cal. Nov. 24, 2021) ("While service of the subpoena is governed by Fed. R. of Civ. P. 45, service of the Motion to Compel is governed by Fed. R. of Civ. P. 5, which already

permits service by mail."); *Freeman v. Giuliani*, 2023 WL 4750552, at *8 (D.D.C. July 13, 2023) ("[N]either Rule 5 nor Rule 45 demands personal service on a non-party witness of motion papers filed in court to enforce a subpoena.").

But the Court need not resolve that issue because NAI personally served OpenAI. OpenAI received the motion on August 17, was physically served on August 19, filed a twenty-page opposition, and then sought leave to file still more briefing. It identifies no missed deadline, impaired defense, or other prejudice. There is none. OpenAI's attempt to dodge discovery based on service should be rejected.

## II. NAI'S MOTION IS TIMELY

OpenAI had ample time to comply with the subpoenas. NAI served the original subpoenas on June 25, forty-seven days before the August 11 document-discovery cutoff. Ex. 6; Laiche Decl. ¶ 33. At OpenAI's request, NAI extended the response deadline to July 16. Ex. 11 at 1. When OpenAI objected to Austin as the place of compliance and refused to engage on the subpoena requests and topics, NAI promptly re-served substantively identical subpoenas on July 23 identifying San Francisco instead. Ex. 5. The place changed, but the requested discovery did not.

OpenAI therefore cannot plausibly characterize the July 23 subpoenas as an eleventh-hour demand. By the time NAI moved to compel, OpenAI had possessed the same substantive requests for fifty-four days. It had already served objections, participated in multiple meet-and-confers, and received NAI's focused questions and proposed declaration identifying the core information NAI sought. Exs. 9–14, 21–27. This is not a case in which a nonparty first received discovery on the eve of a cutoff. OpenAI had nearly two months to evaluate the requests and propose a path to compliance.

Nor did NAI demand an immediate, full-scale collection. It repeatedly offered narrower alternatives, such as answering targeted questions, revising and executing a proposed declaration, or producing documents sufficient to establish the same core facts. Exs. 12–14. OpenAI did not

respond with a proposed collection schedule, identify a single category it was willing to produce, estimate the time needed for compliance, or offer any other workable compromise. Laiche Decl. ¶ 32. It simply refused to provide discovery. *Id.*; Exs. 25–27. Even after NAI's motion to compel was filed OpenAI has not agreed nor offered a single narrowing proposal.

OpenAI's latest timeliness theory, which appears only in its motion for leave to supplement its Opposition, is no more persuasive. Dkt. 11. ***First,*** OpenAI says the August 27 Order "confirmed" that NAI's motion was untimely (Dkt. 11 at 6), but it did no such thing. The Order addressed discovery-dispute charts NVIDIA filed on August 19 and 21. Dkt. 11-1. NAI's August 17 Rule 45 motion against OpenAI was not before the Texas court and is never mentioned. An order resolving different disputes cannot "confirm" the timeliness of a motion it never considered.

***Second***, the Order does not even establish that the disputes before the Texas court were ultimately rejected as untimely. Although the court stated that the parties' private extensions did not bind it, it immediately "withdr[ew] its denial of the requested relief as untimely" and decided the disputes on the merits. *Id.* at 2–3. At most, the Order says the stipulation did not bind the Texas court as a matter of law. It says nothing about NAI's separate motion against OpenAI.

***Third***, OpenAI's supplemental argument also fails on its own terms because NAI did not need the parties' stipulated extension to make its motion timely. NAI complied with this Court's Local Rule 37-3, which permits a motion to compel to be filed up to "7 days after the discovery cut-off." Document discovery closed August 11. NAI filed its motion on August 17, six days later. The motion was therefore timely under the rules of the Court in which it was filed.

The same result follows under WDTX Local Rule CV-16(e), which permits a discovery motion "filed within 14 days after the discovery deadline" when it concerns "conduct occurring during the final 7 days of discovery." OpenAI's responses and objections to NAI's revised subpoena were due August 7, four days before the August 11 cutoff. In those responses, OpenAI again refused

to produce any documents or designate a witness on any topic. NAI then completed an additional meet-and-confer and follow-up correspondence before filing its motion on August 17, ten days after OpenAI's responses and well within Rule CV-16(e)'s fourteen-day window.

Moreover, the August 11 deadline applied only to document discovery. Deposition discovery remains open until September 16. Because NAI's motion seeks testimony from OpenAI, it was filed a month before that discovery period closed.

OpenAI thus tries to turn an order involving different parties, different disputes, and later-filed motions into a ruling on this one. NAI moved within this Court's deadline, within the Western District's fourteen-day window, and while deposition discovery remained open. The motion is timely several times over.

## III. THE SUBPOENAS SEEK RELEVANT, PROPORTIONAL DISCOVERY

OpenAI calls the subpoenas a "fishing expedition" because several requests ask "whether" OpenAI uses NVIDIA technology in particular ways. Opp. at 9–10. That argument would demand NAI already possess the very customer-specific facts it is entitled to discover. Discovery does not work that way.

Neither the Federal Circuit nor district courts require the patentee to identify—much less prove infringement by—the particular induced customers before discovery. *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990) ("[D]iscovery is allowed to flesh out a pattern of facts already known to a party relating to an issue necessarily in the case."); *Minkus Elec. Display Sys. Inc. v. Adaptive Micro Sys. LLC*, 2011 WL 941197, at *3 (D. Del. Mar. 16, 2011) ("[I]dentifying third parties who participated in allegedly infringing activities is a proper question for discovery."); *FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130, at *3 (D. Del. Apr. 11, 2022) ("I recognize that without the use of third-party subpoenas, SRC may not be able to determine which (if any) of Xilinx's customers use Xilinx's products to infringe the asserted claims.").

NAI thus need not prove in advance how OpenAI configures proprietary systems whose operation is known to OpenAI, not NAI. It need only show a concrete connection between OpenAI, the accused NVIDIA products, and the infringement issues on which the discovery bears. *See FG SRC LLC.*, 2022 WL 22997130, at *4 ("SRC is targeting customers who have purchased specific products from Xilinx that SRC alleges can be used to infringe the asserted claims … [which] rises above the level of … 'unfounded suspicion'"); *L.G. Philips LCD Co. v. Tatung Co.*, 2007 WL 869700, at *2 (E.D. Cal. Mar. 21, 2007) (permitting third-party discovery "insofar as it seeks to identify further incidents of infringement regarding the patents-in-suit"). The connection between OpenAI and the accused NVIDIA products is overwhelming.

OpenAI publicly acknowledges massive use of NVIDIA's accused technology. OpenAI and NVIDIA announced plans to deploy at least ten gigawatts of NVIDIA systems for OpenAI's next-generation infrastructure, with NVIDIA intending to invest up to $100 billion as deployment proceeds. Exs. 15–16. NVIDIA describes the partnership as involving "multi-gigawatt data centers powered by millions of NVIDIA GPUs," and NVIDIA's CEO called it "the biggest AI infrastructure project in history." Ex. 16 at 1. Those statements establish NAI is not speculating that OpenAI *might* use accused NVIDIA technology. OpenAI indisputably does, at enormous scale. And tellingly, OpenAI never denies in its Opposition to using the accused NVIDIA GPUs and software identified in the subpoenas. That admitted, large-scale use supplies more than a sufficient factual basis for targeted discovery into which accused NVIDIA products OpenAI uses and how it deploys them.

The requested discovery also maps directly onto specific infringement issues. For example, Request 1 seeks documents sufficient to identify the software, frameworks, libraries, APIs, scripts, configuration files, and custom code OpenAI uses to perform computations on NVIDIA GPUs. Ex. 5 at 12. Request 2 asks which accused NVIDIA software—including cuBLAS, cuDNN, cuFFT,

cuSOLVER, cuSPARSE, PyTorch, TensorRT, and Triton—OpenAI uses in those computations. Request 4 addresses how OpenAI's software interfaces with CUDA, cuDNN, TensorRT, CUDA libraries, drivers, runtimes, and other NVIDIA software. *Id.* The remaining requests address concrete operational features implicated by the asserted claims, including memory use, data transfers, reuse of outputs as inputs, pointer and buffer operations, scheduling, queuing, and synchronization. The deposition topics seek testimony on the same subjects. Those facts bear directly on NAI's infringement theories against NVIDIA because evidence that customers deploy NVIDIA's hardware and software in the configurations NVIDIA supplies, documents, and supports is probative of whether NVIDIA's acts result in the accused uses. *See Negotiated Data Sols. LLC v. Dell, Inc.*, 2009 WL 733876, at *3 (N.D. Cal. Mar. 17, 2009) (permitting third-party discovery because "operation of NVIDIA's chips bears directly upon the accused functions in Dell's chips.").

Here, the connection is concrete because OpenAI admits substantial use of NVIDIA's accused platform, and NAI is entitled to discovery. *See Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *3 (S.D. Cal. Aug. 29, 2011) ("The Court finds the information sought in the subpoenas is relevant to NuVasive's claim of induced infringement and damages therefrom").

## V. OPENAI HAS NOT DEMONSTRATED UNDUE BURDEN

OpenAI's burden defense depends on inflating both the scope of the subpoenas and the effort required to comply. OpenAI says the subpoenas could sweep in "nearly every document" possessed by an AI company and repeatedly invokes a universe of approximately 240 NVIDIA devices. Opp. at 11. Neither characterization reflects what NAI actually seeks.

The requests repeatedly seek only "**documents sufficient to show**" specified facts concerning OpenAI's actual use of accused NVIDIA GPUs and software. *See* Ex. 5 at 12–14. They do not require production of every email, log, configuration file, communication, or document touching an NVIDIA system. This limitation on the subpoena's scope shows that the requested

discovery is not unduly intrusive or burdensome. *In re Matsumoto*, 2023 WL 6959279, at *3 (N.D. Cal. Oct. 19, 2023) ("The Court finds this request to be narrowly tailored to only seek documents 'sufficient to show' the identifying information[.]").

Nor do the requests require OpenAI to investigate every NVIDIA product identified in NAI's infringement contentions. That definition tracks the accused product universe in the underlying case. But each request is limited to products OpenAI actually "use[s]." Ex. 5. OpenAI therefore need not search for, collect, or produce anything concerning a GPU it never purchased, deployed, or operated. OpenAI could easily identify the subset of accused NVIDIA GPU architectures and software OpenAI actually uses through its own procurement, asset-management, deployment, and configuration records.

OpenAI nevertheless assumes that each of the approximately 240 identified devices requires a separate investigation, search, and production. Opp. at 11–17. It offers no evidence for that premise. Moreover, the requests concern overlapping aspects of the same deployments, such as what GPUs and software OpenAI uses, how those systems are configured, and how data moves through the resulting workloads. A single architecture diagram, configuration record, deployment document, technical specification, or representative set of system records may answer multiple requests at once. Because the requests seek only documents sufficient to establish specified facts, OpenAI may identify the smallest set of representative records that are needed.

The subpoena period is likewise neither arbitrary nor excessive. OpenAI repeatedly objects that the requests extend from September 13, 2018 to the present. But that is the damages period for NAI's claims in the underlying action. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 329 (2017) ("[A] patentee may recover damages for any infringement committed within six years of the filing of the claim."). Discovery concerning OpenAI's

deployment of accused NVIDIA products during the very period for which NAI seeks damages is directly relevant to infringement, inducement, and the scope of NVIDIA's potential liability.

**A. NAI Repeatedly Offered Less Burdensome Alternatives.**

NAI did not insist on maximal production. Before moving, it repeatedly proposed narrower ways for OpenAI to provide the core information without wholesale collection.

On August 5, NAI sent focused technical questions expressly "to reduce burden and potentially avoid motion practice," together with a draft declaration OpenAI could revise for accuracy. Ex. 12 at 1; Exs. 13–14. NAI offered to accept an adequate declaration in lieu of further document production or deposition testimony. Ex. 12 at 1. The proposed declaration focused on concrete deployment facts, including which NVIDIA GPUs and software OpenAI uses; whether OpenAI modifies NVIDIA-provided software; how input data is received and stored in CPU memory before transfer to GPU memory; whether OpenAI alters NVIDIA's default data-flow path; and whether the relevant systems support U.S. operations. Ex. 14. OpenAI refused this narrowing proposal.

NAI continued narrowing. On August 10 and 13, it explained why customer-deployment evidence was necessary, clarified that the requests concerned only accused NVIDIA products OpenAI actually used, invited OpenAI to identify specific burdens, and sought further discussion. Exs. 22, 24. Then, on August 14, NAI offered an alternative requiring no declaration at all: OpenAI could simply produce "documents sufficient to show" the information reflected in the proposed declaration. Ex. 26 at 1. OpenAI rejected that option too. Ex. 27.

OpenAI now tries to justify its refusal to compromise by labeling the proposed declaration a "broadening" of the subpoenas. Opp. at 1, 4–5. But it tellingly never explains how. It identifies no declaration paragraph, requested fact, or subject matter that falls outside the subpoenaed categories. It simply repeats the label "broader." *Id.*

A comparison of the declaration and subpoenas shows the opposite. Paragraphs 3–6 of the declaration asked which accused NVIDIA GPUs and software OpenAI actually uses, which is a narrowing of Requests 1 and 2. Paragraph 7 addressed whether OpenAI modifies NVIDIA-provided source code, a narrowing of Requests 3 and 4. Paragraphs 10–13 addressed CPU/GPU memory architecture, unified memory, GDS/UVM, input paths, and custom alterations to those paths, the same architecture and data-flow subjects covered by Requests 5 and 8–10. Paragraph 14 incorporated the subpoena's existing U.S.-based and U.S.-directed limitation. The declaration thus distilled the subpoenaed subjects into a handful of targeted factual propositions. It did not expand them.

And even if OpenAI believed some sentence added detail beyond the literal subpoena, that was no reason to reject the proposal wholesale. NAI expressly invited OpenAI to "revise as necessary [the declaration] to ensure its accuracy." Ex. 12 at 1. OpenAI could have struck disputed language, proposed an accurate substitute, answered the undisputed questions, produced documents on the overlapping subjects, or suggested a staged production. It did none of those things.

OpenAI flatly rejected every narrowing proposal without suggesting any alternatives. And to date it has produced no documents, answered none of the focused questions, proposed no revised declaration, identified no proposition it could confirm, offered no witness, proposed no staged search, and quantified no burden associated with any particular request.

At minimum, the Court can compel the narrower relief NAI already offered, which is documents sufficient to establish the subpoenaed information reflected in the declaration, followed by testimony only as needed to address remaining gaps. That relief requires neither wholesale collection nor acceptance of NAI's proposed wording. It requires only enough existing evidence to establish the discrete operational facts relevant to infringement.

**B. OpenAI Provides Zero Evidence of Actual Burden.**

Against those limitations and alternatives, OpenAI offers no concrete evidence that compliance would be unduly burdensome. Its entire showing is adjectives. It repeatedly says compliance "would take significant time and resources" to understand, locate, and compile responsive information. Opp. at 15–16. But it never says how much time, what resources, or why, particularly given NAI's "documents sufficient to show" framing and OpenAI's obvious ability to identify the NVIDIA GPUs it uses and software it deploys. There is no declaration from a technical employee, records custodian, procurement witness, or IT professional. No number of custodians. No repositories identified. No estimated collection or review hours. No projected cost. No description of any test search, sample collection, or other effort OpenAI actually undertook to determine the burden of compliance.

That falls well short of the showing required to establish undue burden. *See Universal Dyeing & Printing, Inc. v. Zoetop Bus. Co*., 2023 WL 9004983, at *8 (C.D. Cal. June 23, 2023) ("'The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" (quoting *Hall v. Marriot Int'l, Inc*., 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021)); *Waller v. Jet Specialty, Inc.*, 2024 WL 7050192, at *3 (W.D. Tex. 2024) ("The resisting party 'must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'") (citation omitted).

The Court cannot balance a burden OpenAI has never quantified against discovery that NVIDIA itself insists must come from customers. OpenAI's refusal to produce even a single declaration or data point quantifying its alleged burden is fatal to its objection.

## V. CONCLUSION

The Court should grant NAI's Motion to Compel. At minimum, the Court should compel OpenAI to produce documents sufficient to establish the facts addressed in NAI's draft declaration and designate a witness to testify on any remaining gaps.

Dated: September 9, 2026

Respectfully submitted,

*/s/ Tanner Laiche*
Tanner Laiche
CA State Bar 344342
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorney for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for OAI International, Inc.

*/s/ Tanner Laiche*
Tanner Laiche